## DIRECTOPLATE CORPORATION et al. v. HUEBNER-BLEISTEIN PATENTS CO.

Circuit Court of Appeals, Seventh Circuit.
February 6, 1928.

No. 3801.

1. Patents ⬩⟐328—954,290, claims 1, 2, and 3, for machine for producing photographic impressions on sensitized surfaces, held infringed.

Huebner patent, No. 954,290, claims 1, 2, and 3, for machine for producing photographic impressions on sensitized surfaces, such as metal plates, *held* infringed.

2. Patents ⬩⟐328—954,291, claims 1 and 3, for machine for producing photographic impressions on sensitized surfaces, held infringed.

Huebner patent, No. 954,291, claims 1 and 3, for machine for producing photographic impressions on sensitized surfaces, such as metal plates, *held* infringed.

3. Patents ⬩⟐328—954,291, claim 10, for machine for producing photographic impressions on sensitized surfaces, held not infringed.

Huebner patent, No. 954,291, claim 10, for machine for producing photographic impressions on sensitized surfaces, such as metal plates, *held* not infringed, where defendant's machine did not respond to fourth element of claim, which was an adjustable back support.

4. Patents ⬩⟐328—1,201,048, claims 16, 17, and 18, for machine for producing photographic impressions on sensitized surfaces, held not infringed.

Huebner patent, No. 1,201,048, claims 16, 17, and 18, for machine for producing photographic impressions on sensitized surfaces, such as metal plates, *held* not infringed.

5. Patents ⬩⟐328—Claims of Huebner patents Nos. 954,290, 954,291, 1,201,048, for machine for producing photographic impressions on sensitized surfaces, held not substantially narrowed by place in art held by Mertens patents, British (1905) and United States, No. 844,162 (1907).

Claims of Huebner patents, Nos. 954,290, 954,291, 1,201,048, for machines for producing photographic impressions on sensitized surfaces, such as metal plates, *held* not substantially narrowed by place in art occupied by Mertens patents, British (1905) and United States, No. 844,162 (1907), since substantial heavy pressure between negative and sensitized surface was outstanding feature of Huebner devices not found in Mertens, and Mertens shows no scheme for utilizing or handling flat printing plate which is basic feature of Huebner devices.

**6. Patents ⬤⇒328—1,291,897, claim 12, for apparatus for positioning printing plates on plate holders of photographic printing apparatus, held infringed.**

Huebner patent, No. 1,291,897, claim 12, for apparatus for positioning printing plates on plate holders of photographic printing apparatus *held* infringed, notwithstanding the possibly superior merit of defendant's device.

**7. Patents ⬤⇒328—1,291,897, claim 12, for apparatus for positioning plates on plate holders of photographic printing apparatus, held valid.**

As to Huebner patent, No. 1,291,897, claim 12, for apparatus for positioning printing plates on plate holders of photographic printing apparatus, *held* more than improver over others in art, and neither Cohen, No. 565,153, McDonough, No. 548,529, nor Hawkins & Preston, No. 323,932, served to detract from Huebner as primary inventor or to narrow application of claim.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by the Huebner-Bleistein Patents Company against the Directoplate Corporation and another. From the decree, defendants appeal. Affirmed in part, and reversed in part, with directions.

Frank P. Davis, of Chicago, Ill., for appellants.

George I. Haight and Joseph Harris, both of Chicago, Illinois, for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. 1. The litigation in the District Court involved claims of various patents to Huebner, as follows: First, No. 902,584, November 3, 1908, claims 2 and 3; second, No. 954,290, April 5, 1910, claims 1, 2, and 3; third, No. 954,291, April 5, 1910, claims 1, 3, and 10; fourth, No. 1,201,048, October 10, 1916, claims 16, 17, and 18; fifth, No. 1,377,249, May 19, 1921, claims 19 and 54; sixth, No. 1,291,897, January 21, 1919, claim 12; seventh, No. 1,413,406, April 18, 1922, claims 10 and 11; eighth, No. 1,452,078, April 17, 1923, claims 1, 18, and 19.

The decree found validity and infringement of the said claims of the first, second, third, fourth, and sixth of said patents, and awarded accounting as to them, and injunction as to all but the first, which had expired prior to date of decree. It found invalid the enumerated claims of said fifth, seventh, and eighth patents.

The appeal is from so much of the decree as involves the patents as to which injunction against appellants was awarded, being the second, third, fourth, and sixth. The validity of these four patents is not disputed, the undertaking being to escape the claims counted on through their contended nonreading on the alleged infringing devices, or their limitation to specific forms which the patents show.

The first three of these have to do with machines for producing photographic impressions upon sensitized surfaces, such as metal plates, and the last with apparatus for positioning negatives on plate holders for such machines. The first and second of the patents first above enumerated were applied for on same date, February 19, 1907, and the second and third, though applied for respectively February 19 and December 27, 1907, were both granted April 5, 1910.

The inventions here in issue are of importance mainly in the mass production of multicolor work from flat printing surfaces. While multicolor work has been done successfully for generations, the preparation of the surfaces suitable for the printing press has been a hand operation, involving a series of steps, detailed description of which by the layman would involve more or less risk of inaccuracy, and is not essential to the disposition of the appeal.

That Huebner made substantial advances in this art is quite manifest. His machines eliminated several of the steps entailed in the long-practiced hand process, and made possible the production of the printing plates by a direct transfer of the design from the glass negative photographically, thus reducing the possibilities of inaccuracy that attended the hand transfer method, and permitting a more economical reproduction and distribution on the plate of the many designs—which might be all of one picture or of different pictures—that were composed on one plate.

[1] 2. No. 954,290, in its illustrations and description, shows a device in which the sensitized plate, when in position for printing from the negative, is vertical, being mounted on a plate holder made to swing pivotally downward and backward, in order to change the plate. The glass negative is at the inward end of an extensible box or hood, in which is also contained the light for printing upon the sensitized plate the image on the negative. At the opposite end of the hood is a framework with a screw for projecting the negative toward and from the sensitized plate. The box or hood is mounted on a carrier, so that the whole may be moved up and down and sideways, at right angles, and the negative thus brought opposite any part of the sensitized plate, in position for printing the image

thereon, and by relocation of the box or hood this may be repeated until the entire sensitized plate is covered, either by the same image or different ones, by using different negatives, whereupon the sensitized plate is removed for use upon the press, and another plate inserted, and other negatives employed for repetition of the process. Through suitable scaling the position upon the plate of each image is determined, so that in the multicolor product the images from the different plates of the same picture will be in register.

Typical claim 1 is:

"1. The combination of a stationary frame, a holder for the sensitized surface attached thereto and movable therein toward and from the printing position, a carrier for a photographic plate which is adjustably mounted in said frame and movable therein over said surface when in the printing position, and means for adjusting said carrier to stand opposite any desired portion of said surface, substantially as set forth."

Appellants' machine does not show this vertical arrangement of the printing parts, but its sensitized plate, when in position, reposes horizontally upon a bed. The sensitized surface is not attached to a movable holder, as in the patent. The function of the sensitized plate holder of the patent is to hold the plate for printing and to swing it back for replacement, and at the same time to give access to the negative for changing it. While appellants' sensitized plate is not moved through attachment to any movable element, access to it is obtained by the removal of the instrumentalities wherein the negative is mounted. Indeed, the rails upon which the negative frame is supported are themselves in turn supported by a frame which is pivotally mounted and, after removal of rails and negative therefrom, must be swung upward for changing the sensitized plate. In this respect appellants' machine indicates but a reversal of parts. In the one the sensitized plate is moved from the negative, and in the other the negative is moved from the plate.

Considerable has been said on the contention that appellants' negative is not swung upward upon the frame which carries it, in the same way that in the patented machine the plate is swung backward and downward. It seems to us that but a comparatively slight rearrangement of the machine would enable the negative and the rails and other devices in which it is mounted, to be pivotally swung upward with this pivotally mounted frame, instead of being removed to effect this separation of the parts, and that the failure to provide this pivotal movement for the assembly seems but a colorable distinction for the purpose of thereby avoiding infringement.

The carrier of appellants' printing negative is adjustable, directly or indirectly upon rectangular travel lines, to stand opposite any desired part of the sensitized plate, substantially as in this patent. We are satisfied that the claims of this patent here in issue are fairly readable upon appellants' machine.

[2] 3. No. 954,291 shows a device of general similarity to the Huebner machine just considered. It is also upright, and the sensitized plate held stationary in a frame, the positioning of the negative being effected wholly by up-and-down and sidewise movements of the parts wherein it is directly or indirectly held. Claim 1, which is typical of the first two in issue (1 and 3) is:

"1. The combination of a stationary frame provided with a holder for a print-receiving part having a sensitized surface, a carrier for a photographic printing plate adapted to receive said plate on its face side and having means for illuminating said plate, means for adjusting said carrier in said frame toward and from said sensitized surface and pressing the printing plate against said surface, and means for adjusting said carrier in said frame in a plane parallel with said sensitized surface when said printing plate has been withdrawn therefrom, substantially as set forth."

This patent was granted on the same date of the patent last discussed, and at a time when the production of printing plates by the photographic printing apparatus was not greatly developed beyond the hand process. Huebner's patent, No. 902,584, November 3, 1908, although applied for the same date as No. 954,290, makes no reference to photographic printing. The place in the art of Mertens, as applicable to all these patents, will be hereinafter considered.

It is insisted that appellants escape infringement of claim 1, because their illuminating means are not within the carrier which holds the negative, and the means for adjusting the carrier toward and from the sensitized surface and pressing the printing plate against the surface are radically different from those shown in this patent.

While in the structure of the patent the illuminating means appear to be within the box which functions also as the carrier of the negative, such arrangement is not essential to the patent concept nor to the claim. The

lights could as well be outside the box. Detaching them from the carrier and placing them, while so detached, in position where they supply the illumination for making the print, would not patentably distinguish from the claim in this respect. If, instead of attaching the lamp to some part of the frame which carries the negative, it is, as in appellants' machine, suspended above the negative, and manually moved so that it will be over the negative wherever over the sensitized plate it is positioned, infringement is not thereby avoided.

Respecting the means for adjusting the carrier holding the negative, toward and from the sensitized surface, and securing the necessary pressure for printing, it is not so clear that appellants' structure responds to that element of the claim. While appellants no doubt show means for accomplishing this end, misgivings may arise out of the radical difference of these means from those of the patent. The latter show manually operated screws for advancing and withdrawing the parts into and out of contact and pressure. Strong pressure between plate and negative is admittedly essential to the best results. Appellants' means are described with somewhat more of detail in discussing the next patent in issue. It is, in brief, a sealing, by soft rubber strips, of the space between the negative and so much of the sensitized plate with which it is to contact, and the exhaustion of the air between, whereby plate and negative are brought into the necessary relation and the required pressure applied between the members, of from 10 to 15 pounds per square inch; the contact of the parts ceasing on release of the vacuum.

This vacuum pressure device appears in patent to Koppe, No. 1,396,962, November 21, 1921, and is incorporated into his "machine for making offset press plates," for which he was granted patent No. 1,510,007, September 30, 1924. Although the vacuum pressure method may indicate a decided advance over Huebner's described pressure means, it is our judgment that the place in the art of this Huebner patent forbids the conclusion of noninfringement because of the very different means for pressure found in the Koppe machine.

[3] Claim 10 is for "a combination of a stationary frame having clamping devices for holding a sensitized plate, one of said devices being movable away from the other for stretching the plate, an adjustable plate carrier, and an adjustable back support, substantially as set forth."

It cannot well be doubted that appellants' machine responds to the first three of these elements, but does it have the fourth—an adjustable back support? Its back support, or the equivalent thereof, must be found, if at all, in the slatted metal bed upon which the sensitized plate normally rests. These slats are so arranged that they may be contracted together or spread apart to accommodate different sizes of the sensitized plates. But this is evidently not the adjustability contemplated by this element of the claim. The back support of the patent may be said to be adjustable in two ways: One whereby it moves to correspond with the movements of the negative plate holder, so that, wherever the latter is positioned with reference to the sensitized plate, the back support will be directly opposite on the other side of the sensitized plate; and, second, adjustability whereby, through the turning of a screw, the back support may be moved forward to increase the pressure between the sensitized plate and the negative, or drawn back to modify or release the contact.

Whether one or the other, or both, of these elements of adjustability of the back support are within the purview of the claim is not material, since both are entirely absent from appellants' machine. While the sensitized plate is stretched thereon over an intervening rubber blanket, the bed itself is not adjusted with reference to making the pressure contact. When once the slatted bed is in position, with the sensitized plate clamped thereon, the bed remains rigidly immovable, without suggestion of adjustability. Indeed, appellants' means for securing contact and pressure are such that the bed has no function in their application or release. The vacuum formed between the sensitized plate and the negative tends rather to draw the plate away from the bed, and in appellants' machine there is no occasion for an adjustable back support, in the sense in which the machine of the patent shows it.

As appellants' machine does not respond to this element of claim 10, noninfringement of the claim follows.

[4] 4. No. 1,201,048 shows a radical reorganization of Huebner's photographic printing apparatus, which, while embodying the general features of his former patents, shows as a distinguishing feature a revoluble turret having four separate faces whereon negatives may be mounted, the faces to be successively presented to the surface of the sensitized plate by first retracting the turret and then revolving it to present the desired negative,

'and then again moving it toward the sensitized plate, which has behind it a substantial movable backing part for receiving the pressure from the opposite side, to bring the negative and printing plate in close proximity. The patent has various other novel features reserved by its 71 claims, only 3 of which, 16, 17, and 18, embody such as are claimed to be infringed by appellants' machine.

Typical claim 16 is:

"16. In a photographic printing apparatus, the combination of a support for a sensitized part, a support for a photographic printing plate, means for illuminating said printing plate, means for moving said printing plate support toward and from the sensitized part, and additional means for moving said printing plate support a predetermined limited distance toward and from the sensitized plate."

The alleged infringement is in appellants' additional means for moving the negative or printing plate support a predetermined limited distance toward and from the sensitized plate. In claim 17 this is described as "additional means having a fixed throw for moving said printing plate support to withdraw the printing plate from and return it into contact with the sensitized surface," and in claim 18 as "an eccentric for operating said printing plate support to move the printing plate a fixed distance toward and from the sensitized part."

Without undertaking to describe in detail appellees' means for accomplishing this purpose, it is sufficient to say that it is by cams whereby the negative is pressed into close contact with the plate and withdrawn a predetermined distance from such contact, the means for the larger and more rapid approach and separation of the parts being a coarse screw or cog mechanism.

To the extent that Huebner's prior patents, applied for seven years before this one, were basic in their nature, they acquired a standing in the art quite different from subsequent patents involving detail improvements. Generally speaking these latter, in the view of the prior art, would be limited substantially to what they show in the way of improvement. If it were desirable to provide a coarser throw for projecting the negative-holding parts more rapidly toward and from the sensitized plate, and another mechanism for further movement for a predetermined distance and for pressure, there are various ways by which this might be done, and any particular contrivance for doing it which shows invention over what had before been employed may be the subject of a patent. But this does not mean that by such patent there is preempted every contrivance for effecting such end, however it may differ from the one described.

The prime purpose of this predetermined movement is to separate the plate and negative sufficiently to change their relative positions without injury to plate or negative, and then quickly to bring them again into contact. It may be noted that in this Huebner machine, unlike the other two we have considered, the positioning is effected by the up-and-down and sidewise movement of the sensitized plate, whereas in his other machines, as in appellants', these positioning movements are made wholly by moving the parts which hold the negative.

Appellants' means for effecting and holding this separation are strikingly different from those of appellee—and, indeed, their problem is in this respect somewhat different, in that these parts are horizontal, and the moving negative member, being above the sensitized plate, must not only be raised to effect this separation, but must be held to overcome gravity. The separation is brought about first by release of the vacuum which theretofore effected the pressure between plate and negative, whereupon the rails upon which the negative frame is supported are mechanically raised into a position in which energized magnets at the ends of each rail sustain the negative sufficiently apart from the sensitized plate to permit freely the positioning movements. When the sensitized plate and negative are again positioned, the magnets are deenergized and the negative-holding rails thereby dropped, whereupon the vacuum between plate and negative is renewed and pressure applied.

In view of the indicated state of the art at the time of the making of this invention, we are of opinion that the claims in issue of this patent are not entitled to a range of equivalents so broad as to include Koppe's very different device for obtaining, holding, and closing this predetermined separation between these parts.

[5] 5. Appellants' reliance on the Mertens patents for such limitation of the claims of the patents above considered as to preclude the conclusion of appellants' infringement of them, requires some consideration. The Mertens patents—British (1905) and United States, No. 844,162 (1907)—though differing somewhat in language, are for the same thing. They show a device for photographing images upon the sensitized surface of a cylindrical

press roller. The exemplified device shows a structure in form resembling a lathe. The roller is revolubly mounted on a frame, and the movable box above it holds the negative, with a light over it in same box, for printing the image on the sensitized roller surface. The box is mounted to move to and from contact with the roller, and to move lengthwise of it, so that the parts may be brought in contact at any place on the surface of the roller.

Whether such a contrivance was at all practical, at least for multicolor work, was sharply controverted in the evidence and argument. The District Court found it was neither intended for nor practical in the multicolor art.

True, the British specification makes reference to "cylinders used for multi-colour printing," but if by this is meant such as may be used in continuous printing, as wall paper or calico, it would scarcely be applicable here. The United States patent makes no reference to multicolor printing.

While the United States specification contains a statement that the invention may be applied to flat as well as cylindrical printing surfaces, beyond this statement itself there is no indication of the means whereby it might be so applied—evidently no mean task, if judged by the subsequent development of the art.

The District Court found that substantial heavy pressure between the negative and the sensitized surface was an outstanding feature of the Huebner devices not found in Mertens. While both necessarily provide for contact between the negative and the sensitized surface, and neither prescribes the extent of the pressure required, Huebner indulges in some expressions which indicate his purpose of having the parts firmly pressed together. Mertens mentions the parts as fitting closely. Each doubtless contemplated a contact whereby the image would be printed on the sensitized plate. But exceedingly strong contact appears from the evidence to be highly desirable to insure the best results in multicolor work, by eliminating chance for even slight variance between the negative and the image produced on the plate.

It is doubtful whether Mertens shows means whereby such a result is achieved. The contacting part of his light and negative holding box is curved to correspond with the curvature of the sensitized roller, and his negative is joined to the contacting face of the box, so that when the parts are brought together the negative will press upon the opposite surface of the roller. In flat printing a glass negative is employed, and this can be firmly pressed against a flat surface; but the evidence is that upon a rounded glass surface negatives cannot be made, and so Mertens' negative must be of some pliable substance, other, of course, than glass. It is not readily conceived how such a negative could be transparently backed to sustain the very considerable pressure possible with flat surfaces. Indeed, it is not likely that power exerted upon the box, as the Mertens scheme indicates, would produce uniform pressure in all parts of Mertens' contacting surfaces, since the force is applied only straight down from above, and is not in all parts of the negative exerted toward the center of the roller's circumference, whereby uniform pressure contact might be achieved.

Mertens shows no scheme for utilizing or handling a flat printing plate, which is a basic feature of these Huebner devices. There was no evidence of any practical use of the Mertens invention, save only as appellants show in evidence some quite simple multicolor work which they experimentally produced on an alleged illustrative Mertens machine, which appellants procured to be built for the purpose of the litigation. Appellee sharply contends that the machine did not follow Mertens' teachings, in that the printing was not on the roller shown in the patent, but on a plate which was clamped to a cylinder, a segment of which was removed its entire length to admit of the clamping, and that pressure was provided which was much heavier than was possible under the machine of Mertens' patent.

We are convinced that Mertens' place in the art was not such as substantially to narrow the claims of the three Huebner patents which we have above discussed.

[6, 7] 6. Huebner's patent, No. 1,291,897, is, what in the caption of the patent it purports to be, for an "apparatus for positioning the printing-plates on the plate-holders of photographic-printing apparatus." For exact multicolor work it is quite important that the negative or printing plate be properly positioned upon the plate holder, and mechanism whereby this is achieved has useful place in this art.

Huebner's exemplified device evidently has direct relation to his patented turret printing device, described in his patent No. 1,201,048, being shown for a circular plate holder found only in his last-named patent. While it is so illustrated, it is not limited to this form, but may be applied to a rectangular plate holder, such as appears in other of

Huebner's photographic printing apparatus, as well as in appellants'.

The patent describes, in brief, a plate holder with aperture to correspond with the glass negative plate, the holder resting in predetermined position upon a base or table having like aperture, so that a light placed below the table top will shine through the plate to enable the operator working above to see the marks made upon the plate for purposes of registry.

Spaced over the holder there is a removable registering frame, with slidable fingers thereon. Each of 'these fingers has a mark corresponding with a diameter of the holder. There are movable holding lugs attached to the holder on each side of the rectangular negative plate, for adjustment of the plate, so that the marks thereon will be in register with those on the fingers, and when in register the plate, so positioned, is rigidly adjusted in the holder, and the holder is taken to the printing apparatus for printing the plate or negative upon the sensitized printing plate.

One claim only is in issue. We reproduce it, supplying figures to indicate each of its six elements.

12. "The combination of (1) a plate holder having a light opening therethrough and (2) a printing plate secured on said holder in register with said opening; (3) a support for holding said holder in position; (4) a registering device; (5) means whereby a relative movement may be effected between the registering device and said holder for removably locating said registering device adjacent the face of the printing plate in predetermined relation to said plate holder; (6) and means for adjusting the printing plate on the holder to cause a part of the printing plate to register with said registering device whereby the printing plate can be adjusted accurately to a predetermined position on the plate holder."

Appellants' "negative registering" device is made under the teachings of United States patent to Koppe, No. 1,417,749, May 30, 1922. This shows the negative mounted in a rectangular metal frame or carrier, which is placed in predetermined position upon a bed or table. In this table there is no opening corresponding to or in register with the entire negative, but there are openings in it through which movable blocks carrying register marks are visible to the operator, who likewise works over the negative. These blocks are attached to a screw with fine right and left threads, operated by a knob at one end of the screw,

the turning of which will cause the blocks equally to approach or recede from each other, whereby the marks upon the blocks are brought into register with registry marks on the negative. There are adjustable lugs on each side of the plateholder whereby, when the marks on the negative and the blocks are in register, the negative is thus rigidly held within the frame, and the frame removed to the printing apparatus for photographing the image upon the sensitized printing plate.

Much discussion may be avoided by quoting a paragraph from the able and exhaustive brief for appellants:

"Defendants' negative holder may respond to the first element, though there is not the same significance with respect to 'a light opening,' and of course a printing plate (negative) is present when the apparatus is in use. Then there is 'a support' with provision for holding the negative holder in position upon it. There is also a registering device, though not anything like Huebner's, since it comprises parts permanently mounted in the base of the support. There may thus be literal response to the first *four* elements of the claim, and we may say that there is such response to the *sixth* element—means for adjusting the printing plate on its holder. But this claim contains *another distinct element* which defendants' apparatus *entirely lacks*, to wit, 'means whereby a relative movement may be effected between the registering device and said holder for removably locating said registering device adjacent the face of the printing plate in predetermined relation to said plate holder.' "

The concession respecting the five elements is well justified by the facts. These elements are all present in the Koppe device, and, though differing in form from Huebner's exemplification, contribute in quite the same way to the same result.

Respecting the fifth element, it is not entirely clear just what is meant by relative movement between the registering device and holder for removably locating registering device adjacent the face of the printing plate in predetermined relation to the plate holder. For appellants it is contended that this refers to Huebner's registering frame hinged to the table top so that it may be bodily swung clear of the carrier to enable the latter to be removed from the table and another placed there.

The hinging is not necessary; indeed, a slidable frame is also shown. It would not avoid infringement to fix the frame immovably to the table. Indeed, the evidence shows

that this was successfully done. The claim does not require the registry frame to be above the negative. Its terms are broad enough to include a construction wherein it is beneath, and we do not believe that the claim is avoided by so locating it. If appellants' registry mechanism were located above instead of below the negative, its equivalency of appellee's registry frame would be quite apparent. We do not think it is less so because located beneath.

But we think it may be fairly said that the registering device adjacent the face of the printing plate is found in the movable fingers of the device which contact with it. These are predetermined in their relation to the plate, certainly in the direction opposite the travel line of the fingers. As these fingers are movable in one direction and in predetermined position in the other, contacting as they do with the upwardly faced printing plate in Huebner, so in Koppe the position is merely reversed through the registry blocks, movable in one direction and predetermined in the other, located beneath the printing plate with their registering marks facing upward, and contacting with the downwardly facing image on the printing plate. That there is identity of function and result in this, as well as in other elements, cannot well be disputed, and we believe that, fairly considered, this element, as well as the other five, is readable upon the Koppe device. That there is striking dissimilarity in the two devices is manifest. That Koppe's device shows much ingenuity and perhaps patentable advance over Huebner may, for the argument, be conceded; but an improver does not, merely as such, avoid infringement of the thing he improves.

Nor can we assent to the contention for appellants that as to this invention Huebner was only an improver over others in this art. In our judgment neither Cohen, No. 565,153 (1896), McDonough, No. 548,529 (1896), nor Hawkins & Preston, No. 323,932 (1885)—all (but especially the last) urged for appellants as prior art limitations on Huebner—serve to detract from Huebner as a primary inventor, or to narrow the application of the claim. Notwithstanding the possibly superior merit of the Koppe device, the conclusion seems clear to us that it infringes Huebner.

The decree of the District Court is affirmed in all respects save as to claim 10 of Huebner's patent, No. 954,291, and the claims in issue of the Huebner patent, No. 1,201,048, and as to these the decree is reversed, with direction to find that claim 10 of patent No. 954,291 and the claims in issue of said patent No. 1,201,048 are not infringed, and to dismiss the bill as to claim 10 of patent No. 954,291 and the claims in issue of patent No. 1,201,048. Each party shall pay one-half the costs of this appeal.