## SANITARY REFRIGERATOR CO. v. WINTERS et al.

Circuit Court of Appeals, Seventh Circuit.
February 9, 1928.

Rehearing Denied March 6, 1928.

No. 3935.

1. Patents ⌾328—1,385,102, claims 1, 2, 3, 4, 7, for latch, held not novel in location of keeper and lever or provision for automatic closing of door, but only in structural differences.

Winters and Crampton patent, No. 1,385,-102, claims 1, 2, 3, 4, 7, for a latch, *held* not novel in location of keeper on door jamb and lever on door, or provision for automatic closing of door without regard to position of lever, in view of Kiel patent, No. 564,448, Dent patent, No. 67,506, Charles patent, No. 702,185, Schrader patents, Nos. 1,117,709 and 1,170,685, and War patent, No. 1,250,736, but only in structural differences in keeper, latch member, or both.

2. Patents ⌾328—1,385,102, claims 1, 2, 3, 4, 7, for latch, held infringed.

Latch with keeper and latch member located similarly to structure covered by Winters and Crampton patent, No. 1,385,102, claims 1, 2, 3, 4, 7, and head formed with upper and lower curved outer sides coming substantially to a point as in such structure, *held* infringement of such patent, though lug is placed on near side of head of keeper having surface curved similarly to outer surface of head and adapted to contract with arm projecting from handled portion of lever.

3. Patents ⌾165(1)—Valid, narrow claim, though strictly construed, should be defined in light of patentee's meaning and purpose of element in patented structure.

While a valid, narrow claim will be strictly construed, its terms and expressions should not necessarily be limited to hard and fast definition, but language should be defined in light of meaning given it by patentee, with appreciation of purpose or object of element in patented structure.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by Alexander F. Winters and another against the Sanitary Refrigerator Company. Decree for plaintiffs, and defendant appeals. Modified in part, and affirmed in part.

See, also, 20 F.(2d) 671.

E. Hayward Fairbanks, of Philadelphia, Pa., for appellant.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. A patent, No. 1,385,102, to Winters and Crampton, issued July 19, 1921, covering a latch, was the basis of the instant suit. Seven claims are involved, two of which (5 and 6) are broad, generic claims, while the other five (1, 2, 3, 4, and 7) are narrow, specific claims.

The District Court sustained all claims, and found appellant to be an infringer thereof. Thereafter appellees brought suit upon this same patent in the District Court for the Eastern District of Pennsylvania, and the court there held that claims 5 and 6 of the patent were invalid and the other five claims were not infringed by latches similar to the ones made by appellant.

Counsel, with commendable frankness, have made concessions in this court which greatly narrow the controverted issues. Appellant admits the validity of claims 1, 2, 3, 4, and 7, while appellees concede that claims 5 and 6 are invalid. The sole issue remaining, in view of these concessions, is one of infringement of the five valid claims. The concession that these five claims are valid was accompanied by the statement that validity was recognized only in view of an asserted construction which gave to each claim so narrow a field that infringement was not disclosed.

The inventor said:

"This invention relates to a latch of the swinging lever type, particularly adapted for use on refrigerators though applicable in many other relations where a door is to be closed and held in closed position. The swinging lever latch, or as it is better known, the Condit latch, is pivotally connected at one end to the door jamb or casing, allowing the door to be opened when the latch is thrown to an upper vertical position, and coming down across the meeting edges of the casing and door when swung to horizontal position, engaging with a cam member on the door to wedge the door tightly shut. This latch is a very serviceable latch but is relatively hard to operate due to its attachment to the casing instead of the door, and the same is liable to drop to horizontal position in which case the door cannot be closed without first raising the lever to upper vertical position while, many times, the door is inadvertently swung toward closed position and against the lever in its horizontal position with injury either to the lever or door or both. In the present invention, it is a primary object and purpose to provide a latch which may be pivotally connected to the door and which is automatically operated to engage with a retaining member or keeper fixed on the door casing when the door is closed irrespective of the vertical or horizontal position of the latch lever, working as well in the one case as the other. A further object of the invention is to construct a latch of few parts, whereby it may be economically made and which will be durable and efficient in service."

Two typical claims are 1 and 7, herewith quoted:

"1. In combination, a door and casing therefor, a keeper attached to the casing comprising a base, an outstanding post and a head at the outer portion of the post, said head depending below the post and formed with upper and lower curved outer sides coming substantially to a point and with an inner upwardly and inwardly inclined side, a member attached to the door comprising a base, an integral outstanding post projecting from the base and a laterally extending arm at the upper end of the post paralleling the base, and a latch lever pivotally mounted between its ends between the said arm and base of said member, said lever having one arm formed with an under cam side extending from the pivot and adapted to be engaged under the depending portion of the keeper, a handle portion extending in the opposite direction from the pivot and another arm projecting from the handle portion a distance from the pivot and lying substantially at right angles to the first arm of the lever and likewise being formed with an inner cam side, substantially as and for the purposes described."

"7. In combination, a door and a casing therefor, a keeper attached to the casing, a latch lever pivotally mounted on the door between its ends, one end of the lever being

formed into an operating handle and the other into a keeper engaging arm, a second arm projecting from the handle portion of the lever a short distance from its pivot and at an angle to the first arm, said keeper being formed at its outer sides for engagement with the respective arms when the lever is in horizontal and vertical positions, respectively, as the door is closed, to automatically operate the lever so that it will engage under the keeper when the door is entirely closed, substantially as described."

While appellees conceded that claims 5 and 6 were invalid in view of the prior art, we would have no hesitancy in so finding in the absence of this admission.

Whether the other claims are infringed depends entirely upon the position of the patent in suit in the art. No difficulty would be experienced in finding infringement if the patent were a pioneer or was one covering such an improvement as entitled it to a broad range of equivalency. But the patent does not occupy any such position. It is an extremely narrow one, as a reading of the claims at once discloses. Moreover, the record shows a prior art loaded with latches possessing some of the features of appellee's latch.

[1] Describing appellees' latch, counsel say: "The latch is attached to the door of the refrigerator and the keeper for the latch is attached to the door jamb. * * * The swinging latch of the patent in suit is an automatic latch acting to close and tightly close when the door is moved to shut it irrespective of the position the latch lever may have whether horizontal or level."

The prior art as disclosed by the Kiel patent, No. 564,448, the Dent patent, No. 67,506, and Charles patent, No. 702,185, the Schrader patents, Nos. 1,117,709 and 1,170,685, the War patent, No. 1,250,736, all refute the contention of asserted novelty, in the location of the keeper upon the door jamb and the lever upon the door or in providing for the automatic closing of the door without regard to the position of the lever. It may be true that in some of these disclosures because of the law of gravity the lever invariably takes but one position.

In the Dent patent, the keeper was attached to the casing while the member carrying the latch lever was attached to the door. In the Charles latch, the keeper was on the door while the other member was on the casing. The Kiel latch had its keeper on the casing and the latch member on the door. Each structure, examples of which are in

evidence, works automatically when the door is slammed shut whether the latch lever is in a horizontal or a vertical position.

It follows, therefore, that patentable novelty, if any exists, is restricted to the particular structure disclosed. What, then, is the novel structure?

In nearly all of the cited prior art structures, the keeper member has a curved post against which a portion of the lever strikes when the door is swung. Patentees (claim 1) describe this portion of the keeper as "an outstanding post and a head at the outer portion of the post, said head depending below the post and formed with upper and lower outer sides coming substantially to a point." The keeper described in the Kiel patent is decidedly similar. The differences between appellees' lever latch and the prior art structures are more pronounced. Automatic operation is dependent upon the co-operation of the latch and the keeper. Consequently there naturally follow differences in the structural design of one member due to difference in structure of the other member. We repeat, then, that patentable novelty resides in the structural differences of the latches (either in the keeper member or the latch member or in both); that the claims are narrow and their validity is conceded. Our operation of the physical exhibits discloses a basis for the concession of validity. But it is this narrow field and nothing more which the inventor possessed when he secured his patent.

[2] As thus analyzed, limited, and explained, are the claims infringed by appellant's latch?

Appellant's structure has a keeper and a latch member located similarly to the appellees'. But it contends that both its keeper and its latch member differ from those of the patent. Its keeper does not have (so it says) "an outstanding post and a head at the outer portion of the post, said head depending below the post and formed with upper and lower curved outer sides coming substantially to a point," nor does its latch lever have one "arm formed with an under cam side extending from the pivot and adapted to be engaged under the depending portion of the keeper." It supplies its keeper with a lug on the inner or door side and its latch lever is supplied with an arm extending from the pivot of the latch member, but such arm does not engage "the depending portion" of the keeper. Rather is it so constructed and so angled as to come in contact with the lug on the head of the keeper. It is this contact between the

lug and the arm on the latch which causes the latch to automatically swing and lock when the door is slammed. Appellant's keeper, though supplied with "a head formed with upper and lower curved outer sides coming substantially to a point" does not, as in the patent in suit, make use of the curved upper sides to direct the movement of the latch when the door is shut. If the arm on its lever extended a little further, it would contact with the upper curved outer side portion of the head of the keeper.

The precise question then is, Does appellant avoid infringement by placing a lug on the near side of the head of its keeper, the surface of which is curved similarly to the outer surface of its head and which is adapted to contact with the arm projecting from the handled portion of its lever?

[3] Concede the existence of claims that are narrow and restricted to structural design only, yet even in such claims there must be some range of equivalency.

Perhaps the expression "range of equivalency" is not a happy one, nor does it describe the thought as accurately as it should. Instead, it would doubtless be better to say that a valid claim should rarely, if ever, have its language construed with absolute literacy. While a valid, narrow claim will be strictly construed, it by no means follows that its terms and expressions should be limited to a hard and fast, unbending definition. Rather must the language of each claim be defined in the light of the meaning given it by the patentee, with an appreciation of the purpose and object of the element in the patented structure. To illustrate: Patentee speaks of a keeper with its base, its post, and its head. The latter member is described as having "upper and lower curved outer sides coming substantially to a point." In our effort to ascertain whether infringement occurred, we must define the head as well as the "sides of the head." Is the outside of appellant's lug a part of the side of the head of the keeper? Certainly it is a part of the head, and, in the light of the mechanics of the entire structure, the purpose it serves, we conclude that it is a part of the *side* of the head.

The decree is modified in so far as it sustains the validity of claims 5 and 6 of the patent in suit and enjoins the infringement of said claims 5 and 6 and to the extent that appellant is directed to account for its gains and profits due to the infringement of said claims 5 and 6. Otherwise the decree is affirmed. The costs in this court shall be divided equally between the parties.