## WINTERS et al. v. DENT HARDWARE CO.*

Circuit Court of Appeals, Third Circuit.
October 4, 1928.

Rehearing Denied October 31, 1928.

No. 3727.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellants.

E. Hayward Fairbanks, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing the bill of complaint, charging the defendant with infringing United States letters patent No. 1,385,102, issued to Alexander F. Winters and Basil R. Crampton, July 19, 1921. All seven of the claims were alleged to have been infringed. The court held claims 1, 2, 3, 4, and 7 to be valid, but not infringed, and claims 5 and 6, which plaintiffs sought to withdraw, invalid.

The appellants brought suit against the Sanitary Refrigerator Company for the infringement of the patent in question in the United States District Court for the Eastern District of Wisconsin. That court held all seven claims valid and infringed. An appeal was taken to the Circuit Court of Appeals for the Seventh Circuit. 24 F.(2d) 15. There the patentees conceded that claims 5 and 6 were invalid, and the appellee here concedes that the other claims are valid if limited to the specific structure disclosed, and, when so limited, it says it does not infringe.

Claims 1 and 7 are typical. They disclose in combination a door, a casing or joint, a keeper attached to the casing, and a latch lever attached to the door, rather than to the casing. The patentees proceeded upon the assumption that latch levers of this general type in the prior art were all attached to the casing and that one of the novel disclosures in their patent was the transposition of the latch from the casing to the door and the keeper from the door to the casing. They say in their specifications:

"The swinging lever latch, or as it is better known, the Condit latch, is pivotally connected at one end to the door jamb or casing, allowing the door to be opened when the latch is thrown to an upper vertical position, and coming down across the meeting edges of the casing and door when swung to horizontal position, engaging with a cam member on the door to wedge the door tightly shut. This latch is a very serviceable latch but is relatively hard to operate due to its attachment to the casing instead of the door, and the same is liable to drop to horizontal position in which case the door cannot be closed without first raising the lever to upper vertical position while, many times, the door is inadvertently swung toward closed position and against the lever in its horizontal position with injury either to the lever or door or both. In the present invention, it is a primary object and purpose to provide a latch which may be pivotally connected to the door and which is automatically operated to engage with a retaining member or keeper fixed on the door casing when the door is closed irrespective of the vertical or horizontal position of the latch lever, working as well in the one case as the other * * * The mounting of the lever on the door is of value as use of one hand only is necessary for unlatching and drawing the door open. The ability to close the door and latch it automatically, irrespective of the position of the latch lever insures against injury to the latch or door and also insures that the door will be latched when it is swung shut."

The patents, however, to Keil, No. 564,-448, to Dent, No. 67,506, to Schrader, Nos. 1,117,709 and 1,170,685, and to Ward, No. 1,250,736 show latches on the doors and keepers on the casing. So there is nothing new in the transposition by the patentees of the latch from the casing to the door. Neither is there anything new or novel in the door or casing as such. Patentable novelty, therefore, must be found, if at all, in the particular form or function of the keeper or latch or in both.

The keeper in the Keil patent is strikingly similar in both form and function to that of the patent in suit. In Keil, the keeper has a base attached to the casing by three screws. From this base a post extends outwardly for a short distance and terminates in a triangular head, which on the underside

extends downwardly for a distance below the lower edge of the post. The head of the latch is the apex of the triangle. The two sides terminating in the head are practically straight while those of the patent in question are somewhat curved. From the apex of the keeper, when attached to the casing, one of the triangular sides extends upwardly and the other downwardly. The inner or lower side is cut upwardly and somewhat inwardly at a slight angle to the vertical, forming a wedging cam. This meagre description reads equally well on the keeper of either the Keil patent or the patent in suit.

The function of every part of the Keil keeper is practically identical with that of the keeper of the patent in question. One or the other of the arms of the latch lever of the Keil latch slides down on the lower triangular side of the keeper when the door is being closed. Which one of these two arms contacts with this lower side depends upon the position in which the latch lever is when the door is closed. The function performed by the plaintiffs' keeper and the Keil keeper in co-operation with the latch levers is the same function performed by keepers generally in the prior art patents. Only one of the sides of the Keil keeper, however, engages the arms of the latch lever and serves as a cam to direct the lever when the door is closed, but this is due to the design of the arms of the levers and not to difference in principle of operation.

The next question concerns the latch lever. Judge Evans in construing this patent in the Circuit Court of Appeals for the Seventh Circuit said that "patentable novelty resides in the structural differences of the latches (either in the keeper member or the latch member or in both)." The latch lever of the patent is about four inches long. A pin is run through the lever about one inch from the end which engages the keeper. This serves as a pivot or fulcrum. This latch lever is really a handle having two right angled arms near the pivot. One is the extension of handle beyond the pivot and the other is at right angles to it. In operation one of these two arms "is engaged with an outer portion of the keeper when the door is moved to closing position to swing the lever from a vertical position to a horizontal and engage the other arm under the keeper, and the other (arm) of which is engaged with a different outer portion of the keeper when the door is moved to closing position and the lever is horizontal to run the lever upwardly toward vertical position or until said other arm passes under and engages with the keeper to hold the door

closed." These general features and functions of latch levers were old in the art.

The lever in the Keil patent has the general features of the plaintiffs' lever. It will lock when the door is closed whether the lever is in a horizontal, vertical or an intermediate position, because of the co-operation of the two arms 4 and 5 of the lever latch with the keeper "to force the door tightly to" when it is shut. The keeper is mounted on the door casing just as in the patent in suit. The latch lever is pivotically mounted between its ends on the door. One of the ends forms the operating handle and the other contains two arms one or the other of which engages the cam on the keeper when the door is closed.

The elements common to the devices of Keil and the plaintiffs are a door, a casing, a keeper attached to the casing, a lever latch pivotically attached to the door, means on the keeper to engage the arms of the latch and means on the latch to engage with the keeper. The two arms of the engaging end of the Keil lever, however, are in the same parallel plane while the two arms on the plaintiffs' lever are at right angles, but both perform the same function, and this difference is one of design and not of principle of operation.

The Charles patent, No. 702,185, issued June 10, 1902, shows a device having a latch lever corresponding in its essential features with the plaintiffs'. It has a handle portion which may stand in a horizontal, vertical, or intermediate position. There are two arms on the other end, one extending beyond the pivot or fulcrum and the other substantially at right angles to it. The function of these arms, coacting with the keeper, is to fasten the door when it is shut and to hold it in a closed position. This latch considered as a design structure is somewhat different from the plaintiffs', but functionally both are substantially the same.

The function of the arms generally is to trip, or give a kick to, the latch lever by the coaction of the arms with the keeper when the door is closed. The object of all these tripping devices, which are numerous and old in the art, is to fasten the door and hold it in a closed position, regardless of the position of the lever when the closing operation begins.

The art was crowded with latches that automatically lock when the door is closed when this patent to Winters and Crampton was issued. In addition to the patents to Keil and Charles, there are patents involving the same general features and functions to Dent, No. 670,506 (1900); to Schrader, No. 1,117,709 (1914), No. 1,170,685 (1915), No. 1,265,120

(1917); and to Ward, No. 1,250,736. In speaking for the Circuit Court of Appeals for the Seventh Circuit, Judge Evans said of the plaintiffs' patent:

"Whether the other claims [than 5 and 6 admitted to be invalid] are infringed depends entirely upon the position of the patent in suit in the art. No difficulty would be experienced in finding infringement if the patent were a pioneer or was one covering such an improvement as entitled it to a broad range of equivalency. But the patent does not occupy any such position. It is an extremely narrow one, as a reading of the claims at once discloses. Moreover, the record shows a prior art loaded with latches possessing some of the features of appellee's latch. * * * Patentable novelty, if any exists, is restricted to the particular structure disclosed. * * * The precise question then is, Does appellant avoid infringement by placing a lug on the near side of the head of its keeper, the surface of which is curved similarly to the outer surface of its head and which is adapted to contact with the arm projecting from the handle portion of its lever? Concede the existence of claims that are narrow and restricted to structural design only, yet even in such claims there must be some range of equivalency."

Counsel sought to withdraw claims 5 and 6, but Judge Dickinson declared them to be invalid. We have grave doubt as to the validity of the other claims, but, if they are valid, their scope is clearly confined to the structural design disclosed. The question then arises: Does the defendant's device infringe the structural design which plaintiffs' patent discloses?

The defendant's device has a keeper attached to the casing of the door and a latch attached to the door, but they are quite different in design from the plaintiffs'. The defendant's keeper is old. It has an outstanding post, and a head depending below the post, and formed with upper and lower curved outer sides coming substantially to a point, but it has a lug on the near side of the triangular head. The plaintiffs' keeper does not have this.

The latch of the defendant has one arm formed with an under cam side extending from the pivot and adapted to be engaged under the depending portion of the keeper, but its other arm is entirely unlike it in form. This arm contacts with the lug on the keeper and this causes the lever to swing and lock when the door is closed. The upper triangular side of this keeper performs no function when the door is closed. For anything that it does, it might as well not be there. It does not coact at all with the latch, but the same side in the plaintiffs' does.

Both the design and function of the defendant's latch and keeper are unlike those of the plaintiffs'. They cannot be said to infringe unless they come within the narrow range of equivalency of a design patent entering a crowded art. Structural design claims have some "range of equivalency," but that range must be as narrow as the invention itself. Is the lug outstanding from the head of defendant's keeper equivalent to the upper triangular side of the plaintiffs' keeper? It certainly is not in structure. It performs a similar function, just as do the sides of many keepers of the prior art. Neither does defendant's latch have any arm corresponding in design to the upper arm of plaintiffs' latch. If the patent in suit were a pioneer patent, and originated the trip or kick that locks the door when it is closed, then the defendant's device might infringe. The patent would be entitled to a broad construction and wide range of equivalency. But it came into an already crowded art, with many patents having various devices, involving arms, cams, lugs, projections, protuberances, and all sorts of contrivances for holding the door in a closed position when it was shut.

The same range of equivalency here contended for by the plaintiffs, so as to include the defendant's structure, would bring plaintiffs' patent within the prior art and invalidate it. It seems to us that the choice lies between holding the plaintiffs' patent invalid for want of patentable novelty over the prior art, or holding it valid, but limited to the particular structure disclosed, which does not include the defendant's device within its range of equivalency.

The purpose of the patent laws is to reward those who make some substantial discovery or invention, which adds to knowledge and takes a step in advance in the procession of the useful arts. It is not the object of those laws to grant a monopoly for every trifling device, every shadow or shade of an idea, which would naturally and spontaneously occur to any mechanic skilled in the art. The patent laws never intended to lay such a heavy tax upon the industry of the country, without seeing that some real contribution was made to the advancement of the useful arts. Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 27 L. Ed. 438. We think that the structure of the defendant's latch and keeper are so unlike those of the plaintiffs' that they do not come within the

586

range of equivalency necessary to constitute infringement. With great respect we are constrained to reach a different conclusion from the Circuit Court of Appeals for the Seventh Circuit.

The decree of the District Court, dismissing the bill because of noninfringement, is affirmed.