## CHICAGO PATENT CORPORATION v. GENCO, Inc.

### No. 7720.

Circuit Court of Appeals, Seventh Circuit.
Dec. 12, 1941.

Clarence E. Threedy, of Chicago, Ill., for appellant.

Thos. H. Sheridan and James A. Davis, both of Chicago, Ill., for appellee.

Before MAJOR, and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The District Court held valid and infringed, plaintiff's patent to Bellah, reissued April 19, 1938, No. Re.-20698. Defendant now insists that the patent is invalid and, alternately, properly construed, not infringed. Claims 3, 13 and 15 are in issue.[1]

The pin-ball game device of the patent can not be simply or easily described. Consequently we shall endeavor to limit our discussion to only such features as seem necessary and pertinent to our conclusions. The machine is an outgrowth of bagatelle games originating long years ago. A dominant characteristic in all such related modern devices is movement of a marble or ball over a playing plane to find lodging in scoring pockets or to ring a bell by impact or electrical contact, thus indicating the score attained, the player always attempting to amass a high total.

Plaintiff's device is coin controlled and utilizes, to propel the ball, a plunger actuated by a spring which propels separately each of five balls over the upwardly inclined surface of the playing board. Bellah claims to be the first to provide in pin-ball game devices means for an "indicated game objective" by attainment of which the player is rewarded with one or more "free games" as distinguished from "free plays."

[1] Claim 3: In a game apparatus, the combination of: (1), a cabinet having a sight opening formed therein and having an inclined playing board therein; (2), said inclined playing board having a group or bank of ball exit or scoring openings formed therein; (3), a member slidably mounted in a wall of said cabinet; (4), means for propelling balls one at a time onto the upper portion of said playing board so that they may gravitate thereover and enter into said scoring openings; (5), a dial in said cabinet having an annular row of numerals thereon visible through said sight opening and each indicating a predetermined number of free games to be allowed the player; (6), means including an electromagnetic device actuated by balls entering certain combinations of said ball exit or scoring openings to move said free game dial a predetermined circumferential distance in one direction; and (7), means coacting with said member to return said dial a predetermined circumferential distance in a direction opposite to the said first-named direction each time the said member is operated.

Claim 13: In apparatus of the class described, (1), means for playing a game to attain a game objective, (2), adjustable means for indicating the game objective, (3), coin-controlled means for setting the first said means for play, (4), free game means for resetting the first said means for the playing of a free game, said free game means normally being ineffective to reset the first said means, (5), means operable by the first said means whenever the same is operated to attain the game objective for rendering said free game means effective to reset the first said means for playing a free game, and (6), means automatically operable by the first said means when the same is operated to attain the game objective for changing the game objective.

Claim 15: In apparatus of the class described, (1), means for playing a game to attain a game objective, (2), adjustable means for indicating the game objective, (3), coin controlled means for setting the first said means for play, (4), free game means for resetting the first said means for the playing of a free game, said free game means normally being ineffective to reset the first said means, (5), means operable by the first said means whenever the same is operated to attain the game objective for rendering said free game means effective to reset the first said means for playing a free game, (6), means automatically operable by the first said means when the same is operated to attain the game objective for changing the game objective, and (7), manual means for optionally changing the game objective.

This objective is reached by accurate direction of the balls, which, when they find lodging and thereby make certain contacts, close switches in electric circuits and thereby actuate free game registration and indicate also means for changing the indicated objective and setting up another, which, if attained, in turn will reward the player with additional free games. At the beginning of the game a coin is inserted in a proper slide and when that is pushed in, the balls are placed in position to be propelled and played. The attainment of a free game makes possible replaying without insertion of an additional coin. The objective and the means for its attainment, whereby the player receives free games, the patentee disclosed in the claims we have referred to. They show means for indicating the objective; for registering and indicating the free games available to the player; for changing the game objective automatically after attainment of one free game and for changing the game objective at the option of the operator.

The structure includes a cabinet with a socalled "shuffleboard" sliding panel on which are mounted a number of electrical switches which are closed by contact with the ball. In the cabinet, in addition to the panel, is an upwardly slanted playing board which has in it certain ball exit openings, which normally register with the electric switches, for trapping and directing balls into switch closing position. One set of holes may be called secondary and the other master openings. The ball, serving as a missile to be propelled by the spring-urged plunger, is brought into proper position to be forced along and up a run-way to the top of the slanted playing board from which it rolls down toward the bottom. It may find lodgment in any one of the openings in the board and thereby complete the electric contact and make appropriate registration and from there it eventually returns to its resting place, there to remain until again put into play. If the player succeeds in dropping a ball in a master opening, the electric circuit is closed and the player awarded automatically a free game indicated to him by an electric sign. This attainment of objective may be continued indefinitely if the player succeeds in finding the appropriate hole for the ball. Each time the objective is attained, another free game is his reward.

The patentee employs a dial for indicating the objective. This is mounted upon a shaft and is capable of rotation with it.

Secured to the same hub, as a dial for indicating the objective, is a ratchet wheel capable likewise of relative rotation with respect to the shaft. A spring somewhat like that of a clock actuates the dial, causing it to rotate in counter-clockwise direction and preventing opposite rotation of the ratchet wheel.

Without going into great detail, it is by means of this mechanism that the free game indicator makes visible through an opening the free game or games obtained by and awarded to the player. The patentee said that the arrangement of scoring openings for balls and master openings for balls and the numerical scoring values and color notations indicated near these openings were provided merely to explain the operation of the new apparatus and were not in any way a limitation of the invention or "the essence of the same."

In his patent he described the method of playing and the construction for carrying the invention into effect. He said that the examples he suggested were not to be "construed as a limitation upon the procedure the player may follow," as there "may be considerable variation," and that the preferred form of construction "is capable of variation and modification without departing from the spirit of the invention." He added, therefore, that he did not desire to be limited to the "precise details of construction set forth" but rather to avail himself of "such variations and modifications" as might come within the scope of the claims.

He was claiming a device including mechanism and means to provide and indicate a definite objective for the player, accomplishment of closure of two electric switches, thereby attaining that objective, —automatic reward of a free game. That objective of course could be obtained only by the closure of the electric switches provided for that purpose. He claimed also means to indicate the number of free games available to the player, to indicate his objective, to change the objective automatically when it is attained, to subtract from the indicated free game awards each game as it is completed and to enable the player, by actuation of the coin slide, to recondition the machine for operation without deposit of a coin.

Defendant contends that the device of the patent is inherently a gambling machine without utility and, therefore, beyond protection by the patent laws. To

gamble is to risk money or other possession upon an event, chance or contingency in the hope of realization of gain and the test as to whether a combination constitutes a gambling device is whether it is " * * * adapted, devised, and designed for the purpose of playing any game of chance for money or property. * * *" Davies, Sheriff, v. Mills Novelty Co., 8 Cir., 70 F.2d 424.

Here the trial court made a specific finding that skill in operating the device is not wholly absent, that the machine may be operated "without gain being a factor" and that the court could not conclude as a matter of law that it is incapable of legitimate use. Nothing of monetary value, nothing susceptible of purchase and sale passes to the successful player. At the most, he receives merely an opportunity to continue freely his use of the device for the enjoyment of which he has originally invested a coin. Bearing in mind that issuance of the patent creates a prima facie presumption of utility, Fuller v. Berger, 7 Cir., 120 F. 274, 65 L.R.A. 381, the absence of any showing by defendant to overcome such presumption and the finding of the trial court, it is apparent that we can not say as a matter of law that the combination of the patent is inherently a gambling device.

Defendant insists that claims 13 and 15 are invalid because, it is asserted, they claim in a reissue an invention different from that shown and described in the specifications and drawings of the original patent. In this connection defendant claims that "means operable by the first means, (the means for playing the game,) whenever the same is operated to attain the game objective for rendering free game means effective to reset the first means for playing the game" and "means automatically operable by the first said means, (the playing means), when the same is operated to attain the game objective for changing the same," clearly demand an apparatus which conditions the machine for free play or awards free games whenever the machine is operated in an effort to obtain the indicated objective. The Patent Office found no fatal defect in the language and the trial court expressly discarded the contention, with the statement: "I am unable to agree with the contention of defendant that clauses 5 and 6 of claim 13 should be construed to mean a free game means is rendered effective to reset the playing

means for playing a free game each time the playing means is operated, regardless of the non-attainment of an objective, and similarly, I am unable to agree with defendant's contention that the last clause of this claim should be construed to mean that the game objective is changed each time the playing means is operated, whether or not the player is successful in attaining his objective."

We think that the language "whenever the same is operated to attain the game objective" means only operation resulting in attainment of that objective. This is confirmed by consideration of the drawings and specifications. Obviously a machine which always automatically awards free games whenever and however operated, would be of no commercial value to the owner, for the player, thus attaining free games, would be able to play freely so long as the machine should last.

Apparently Bellah was the first to invent a free game pin-ball machine and while what he teaches is not strictly of pioneer character in all respects, he was a pioneer in that he first invented this unique feature. It would well seem to follow in interpreting this element that he is entitled to a liberal construction of what he first brought into the art. To this extent the rules of construction in pioneer patents are applicable and the claims, so far as a new contribution is made, are not to be narrowly or literally construed. Especially is this true when commercial success has followed, as it has here, the introduction of the new device into the field.

The prior art discloses no teaching of this essential new element of Bellah's combination. It contains no teaching of "a free game" pin-ball machine. It discloses nothing in the nature of mechanism designed to condition prior art machines for free game operation after attainment of an indicated objective. The score indicating dial of Kirk 1973815 and of Coune, British 381418, neither anticipates nor limits what Bellah taught and accomplished. His specification of this new essential element in his combination carried the art forward to a place where, in substitution for what he specified of something performing the same function, the substitute must be looked at from the viewpoint of liberal interpretation of his inventive suggestion.

In claim 3 the patentee specifies as a part of his combination "a dial in said cabinet having an annular row of numerals thereon

visible through said sight opening and each indicating a predetermined number of free games to be allowed the player." Defendant insists that its device "Triple Play" does not include this element and in deciding the question of infringement in this respect, it is apparent that the issue depends wholly upon whether defendant's device responds to the specification above mentioned. In defendant's combination "Triple Play" we find all the other elements of Bellah: the cabinet, the inclined playing board, the ball exit holes, connected with switches, coin slide and means for propelling the balls. Defendant says that the registering of free games in its machine is accomplished by providing at the end of the cabinet an upright box-like structure having an open front and a normally locked back door. This open front is closed by a translucent panel, to which defendant applies numerals, representing the number of free games awarded to a successful player and these may be successively illuminated by closure of successive switches resulting from step by step movement of a dial or disc termed by defendant a commutator switch, actuated by an electromagnetic element. The successful deposit of balls in certain openings results in award of free games just as in Bellah's device and the closure of switches indicates the result by movement of the dial indicator or disc to illuminate the proper numeral on the translucent panel. In the patent and in defendant's device the closing of switches by successfully propelled balls actuates a rotatable disc-like member by electromagnetic means. The machine is automatically conditioned for play thereafter, and free games achieved are indicated to the player.

The specific dial of Bellah bearing numerals on its periphery, visible one at a time through an opening in the panel board, is not present in the device. The District Court, however, found that the claim was not so limited as to exclude the element of defendant's device. It found that the provision of defendant's machine of the translucent panel at the rear with means to illuminate appropriate portions thereof was "sufficient response" to the Bellah's element; that the patentee's dial is not literally present in the "Triple Play" but that a full equivalent of such element is found in the rotatable disc which is moved in response to the closure, by propelled balls, of switches which constitute the player's objective and that the mere transfer of the numerals indicating free games

awarded to the player from a rotating dial to the translucent panel for illumination resulting from the closure of the proper contacts by the rotating dial or disc does not escape response to the claim for the reason that it is an equivalent available to the patentee in construction of his claim.

We find no error in this conclusion upon the part of the trial court and we think the analysis of fact the correct one. The step by step rotatable disc member, operating as it does as result of closure of switches, achieves exactly the same result as the specific dial of Bellah. Whether it be the exact mechanical equivalent, it is an element performing the same function in substantially the same manner. The removal of the numerals from the disc and their relocation at a spot where illumination is supplied is not such a change as removes defendant's device from response to Bellah's claims. As was said by this court in Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685, 692: "Patents are not limited to the structure described and shown, but having described his invention and shown its principles, a patentee is deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim with respect thereto. Simplex Appliance Co. v. Star Can Opener Co. [7 Cir.], 37 F.2d 491. The test of infringement is whether the accused device does substantially the same work in substantially the same way and accomplishes the same result." See, also, Sanitary Refrigerator Co. v. Winters et al., 7 Cir., 24 F.2d 15, affirmed 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

Defendant insists that its "Ragtime" and "Recorder" devices do not infringe for the additional reason that they do not contain ball exit openings but employ bumper switches, closed by balls bumping against them. In Bellah's device the balls drop through openings, closing circuits. In these devices of defendant they do not drop through holes but bump against upright standards. At each bumping a switch is closed, electrical circuit is completed and registration occurs. The sole difference in this respect is that in Bellah the ball drops into a hole into a switch and thereafter makes contact whereas in defendant's device the ball may strike one or more bumper switches. Basically the means is the same, the closing of the switch by the propelled ball. We agree with the District Court that the substitution of one kind of switch

for another and elimination of openings do not avoid infringement. That court specifically held that since the player's objectives in all of the devices comprise closure of switches for conditioning electrical circuits, the difference in construction of defendant is not such as to escape response to Bellah's claims. The language of this court in Directoplate Corporation v. Huebner-Bleistein Patents Co., 7 Cir., 25 F.2d 96, 103 is pertinent: "That there is identity of function and result in this, as well as in other elements, can not well be disputed, and we believe that, fairly considered, this element, as well as the other five, is readable upon the Koppe device. That there is striking dissimilarity in the two devices is manifest. That Koppe's device shows much ingenuity and perhaps patentable advance over Huebner may, for the argument, be conceded; but an improver does not, merely as such, avoid infringement of the thing he improves."

We agree with the District Court that the elements of claim 13 are present in the "Triple Play" device and that those of claims 13 and 15 or proper equivalents within the specifications are present in and infringed by the "Ragtime" and "Recorder" device.

The judgment is affirmed.