RHODES v. LINCOLN PRESS-DRILL CO.

(Circuit Court, S. D. Illinois. October 6, 1894.)

1. PATENTS FOR COMBINATIONS—NOVELTY AND INVENTION—INFRINGEMENT.
   Where a patent is for a combination, and such combination is new, and produces useful results, it is immaterial that the separate elements are found in different prior machines.

2. SAME—ANTICIPATION—ESTOPPEL.
   A combination claim cannot be invalidated by showing that certain original claims, containing all but one of the elements in the claim in controversy, were rejected on the citation of prior patents, and by then showing that there was no invention in adding the additional element.

3. SAME—GRAIN PRESS DRILLS.
   The Rhodes patents, Nos. 355,716 and 400,947, for press drills for sowing wheat and similar grain, held valid, and infringed; the first patent as to both its claims, and the second as to its third and fourth claims.

This was a suit for the infringement of a patent.

Bond, Adams, Pickard & Jackson, for complainant.

Lysander Hill, E. D. Blinn, and J. W. Hill, for defendant.

ALLEN, District Judge. This suit is brought by John W. Rhodes against the Lincoln Press-Drill Company for the alleged infringement of letters patent No. 355,716, granted to John W. Rhodes, January 11, 1887, and letters patent No. 400,947, granted to John W. Rhodes, April 9, 1889. These patents relate to press drills for sowing wheat and similar grains, in which a front frame, mounted on runners, is followed by rear frames, pivoted to the front frame. The seed is dropped through the heel of the runner into the trench made by the runners, and the rear frames are provided with press wheels, which follow the runners, and press the dirt down upon the seed. In the old press drills in general use before the Rhodes patents, this rear frame was a single, rigid frame, all the wheels of which rose or fell together as the drill passed over irregularities in the ground. With this construction, the evidence shows that if a machine containing more than six runners and six press wheels in a rigid frame was made, the wheels rose and fell together, which limited the width of the machine, and in passing over irregularities of the ground the axle would bend and finally crystalize and break. Several attempts had been made prior to the Rhodes invention to obviate this difficulty, but, as the evidence shows, without practical success. The machine described in the first Rhodes patent may be briefly described as follows: To a front frame carrying the runners is hinged a plurality of rear press-wheel frames, consisting each of two side bars with an end bar connecting their rear ends. An equalizing bar is pivoted to these end bars. When more than two rear frames are used, three or more equalizing bars are employed, according to the number of rear frames. Each of these rear frames carries a separate axle, upon which are mounted a plurality of press wheels arranged to follow behind the runners, and press the dirt down over the seed. A seat beam, pivoted at its front end to the front frame, extends upwards and backwards,

and is connected with the equalizing bar by a support extending from the seat beam to the equalizing bar. A seat for the driver is carried upon the rear end of the seat beam, thus distributing the weight of the driver, by means of the equalizing bar, over the rear frames and upon the press wheels. By shifting the position of the seat, the driver's weight tends either to raise the runner frame from the ground in order that the machine may be turned in the field, or to properly press the wheels upon the seed. Without going into the description more in detail, the evidence shows that this machine proved a practical and successful machine, solving serious difficulties, and going at once upon the market.

The claims of this first patent are as follows:

"(1) In a grain drill, the combination, with the runner frame, of the frames, P, hinged to said runner frame; the shafts, S, held by said hinged frames; the press wheels, mounted on said shafts; the distributing bar, A, pivotally connected at its ends to said hinged frames; the seat, B, supported above the center of said bar; and the beam, C, joining said seat to the runner frame,—substantially as specified. (2) In a grain drill, the combination with the runner frame of the frames, P, hinged thereto; the shafts, S, held by said hinged frames; the press wheels, mounted on said shafts; the distributing bar, A, pivotally connected at its ends to said hinged frames; the beam, C, hinged at its front end to said runner frame, and supported at its rear end above the center of said distributing bar; the bar, C', rigidly secured to said bar, C, and projecting rearwardly therefrom; the seat, mounted on said bar, C', and a fastening for securing the same at different points on its bar,—as and for the purpose specified."

A number of patents are set up by the defense as anticipating this patent, those principally urged being the Smith patent, No. 266,325, the Wishart & Busick patent, No. 293,389, and the Bolton corn-planter patent, No. 326,388. These patents are not mentioned in the defendant's brief. The defense of anticipation seems to be practically abandoned. The only defenses there stated are that the claims are for mere aggregations and noninfringement.

The claims are not open to the charge of being for mere aggregations. It is enough to say that none of the prior patents contains the combination of the claims of the first Rhodes patent; and it is not seriously contended by the defendant's experts that any one of them does. In a combination patent, where the novelty of the invention consists in the combination, it is immaterial whether the elements are new or old, provided the combination is novel, and practically produces a new and useful result. Where the thing patented is an entirety, the respondents cannot escape the charge of infringement by alleging or proving that a part of the entire invention is found in one prior patent, printed publication, or machine, and another part in another prior exhibit, and a third part in another, and from the three or more draw the conclusion that the patentee is not the original and first inventor of the patented improvement. Imhaeuser v. Buerk, 101 U. S. 660; Latta v. Shawk, 1 Bond, 259, Fed. Cas. No. 8,116; Machine Co. v. Pearce, 10 Blatchf. 403, Fed. Cas. No. 4,312; Bates v. Coe, 98 U. S. 48; Manufacturing Co. v. Steiger, 17 Fed. 250; National Cash Register Co. v. American Cash Register Co., 3 C. C. A. 559, 53 Fed. 367. The evidence clearly shows that the Smith and the Wishart & Busick machines were practi-

cally inoperative, and, when actual machines were built under the patents, these machines proved complete failures.

It is urged in defense that the claims of the first Rhodes patent are void for want of patentable novelty in view of the application file record, because they do not show "invention" over other claims, particularly the original fourth claim, abandoned upon references cited. The position taken is that the original fourth claim contained all the elements of the original fifth claim, which is the present first claim, except the seat beam. A machine is then supposed to be built up from the specification of the patent in question, and having all the parts of the Rhodes drill except the seat beam. An older patent for a rigid rear frame drill showing a seat beam is produced, and the assertion made that there would be no "invention" in putting the seat beam in. That this is not the proper way of looking at the matter appears from cases where a similar position was taken. In Reiter v. Jones & Laughlin, 35 Fed. 421, Mr. Justice Bradley, in deciding the case, overruled this position, and said (page 423):

"It is contended that the making of the grooves was no invention, and that, if it was, they had been made and used before for precisely the same purpose. The fair questions to put, however, are, was there no invention in the whole thing taken together, the detachable crown or lid with its grooves and cells? And has such crown or lid been used before?"

It must be remembered that this first claim stands as originally drawn, and unamended. The references cited by the office against the other claims were the Smith and the Wishart & Busick patents. Now, if a machine were built up having the elements of this original fourth claim, not in the light of the Rhodes invention, but from the Smith and the Wishart & Busick patents cited, the machine so built up would be like the Smith or the Wishart & Busick machine. The question of putting a seat beam into such a machine would be quite a different matter. Indeed, the evidence shows that Smith, Wishart & Busick, all tried to contrive a means to place a seat beam into such a machine, but failed, and their machines were thrown away, and abandoned as worthless. A number of decisions of the supreme court, beginning with Leggett v. Avery, 101 U. S. 256, coming down to Knapp v. Morss, 150 U. S. 224, 14 Sup. Ct. 81, are cited as supporting this position. The doctrine laid down by these cases, however, is simply this: that when a patentee, in response to references cited against a claim, has amended it, or has abandoned it, and accepted another claim, he cannot afterwards assert that the allowed claim covers the same ground or is coextensive with the abandoned claim; when a claim has been rejected on references, and the rejection acquiesced in, and another claim accepted by the patentee, the patentee is estopped from claiming the benefit of his rejected claim on such a construction as would be equivalent thereto. The case of Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, decided by the circuit court of appeals for the third circuit, analyzes the authorities, and shows that the courts will not extend this doctrine of estoppel beyond the doctrine above laid down.

Of the second claim of this patent, it is enough to say that it is for substantially the same elements as the first claim, with the added elements of "the bar, C′, rigidly secured to said bar, C, and projecting rearwardly therefrom, the seat mounted on said bar, C′, and a fastening for securing the same at different points on the bar," and that, if the first claim is valid, the second is also valid. The claims in suit of the second Rhodes patent are as follows:

"(3) In a grain drill, the combination, with the front frame and the rear frames hinged thereto, of the seat beam pivoted to the seed box on the pivot of the rear frames, substantially as shown and described. (4) In a grain drill, the combination, with the front frame and the rear frames hinged thereto, of the seat beam pivoted on the pivot of the rear frames, and the rigid seat support connected to the seat beam near its rear end and to the rear frames, substantially as described."

The object of the construction described in these claims is to avoid the racking of the machine and the oscillating of the driver's seat, caused by the rising and falling of the rear frames in passing over irregularities of the ground when the front end of the seat beam and the front ends of the rear frames are not pivoted on the same line. Of these claims it is enough to say that they are nowhere anticipated by the prior art as shown, and, while the invention may be a narrow one, I am not prepared to say that it does not involve patentable novelty. I therefore conclude that the patents are valid, and that the claims in suit in each of these patents are valid claims for the combinations therein described.

The question of infringement may be briefly disposed of. The machine of the defendant contains every element of the claims of the first Rhodes patent, combined together in the same way, and operating in the same manner. As to the second patent, defendant's machine has the front end of the seat beam, and the front ends of the rear frames pivoted on substantially the same pivotal line. A decree may therefore be entered in favor of the complainant upon both claims of patent No. 355,716 and upon the third and fourth claims of patent No. 400,947, with costs.