### CHICAGO LOCK CO. v. TRATSCH et al.
### TRATSCH et al. v. CHICAGO LOCK CO.

Nos. 5179, 5180.

Circuit Court of Appeals, Seventh Circuit.

July 16, 1934.

Rehearing Denied Oct. 1, 1934.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellant.

Clarence E. Threedy and Charles B. Cannon, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This action was instituted by Walter A. Tratsch and the Monarch Tool & Manufacturing Company against the Chicago Lock Company for infringement of Tratsch patent, No. 1,908,380, issued May 9, 1933, and Louis Hall patent, No. 1,908,752, issued May 16, 1933. Hall had assigned his entire interest in his patent to the Monarch Company, and Tratsch had assigned one-half interest in his patent to the Monarch Company, and the company had in turn assigned one-half interest in the Hall patent to Tratsch. Both patents relate to a coin slide or coin-controlled device for vending machines. The Chicago Lock Company pleaded invalidity and non-infringement.

The District Court dismissed the bill for want of equity, in so far as the Tratsch patent was concerned, and from that part of the decree the appeal of Tratsch and the Monarch Company is prosecuted under cause No. 5180.

The District Court further held that claims 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 19, 20, 23, 24, and 25 of the Hall patent were valid and infringed by the Chicago Lock Company's devices, Exhibits I and 10, and from that part of the decree the Chicago Lock Company prosecutes its appeal under cause No. 5179. The court further held that all the claims of the Hall patent were valid and infringed by Chicago Lock Company's device, Exhibit H, which was practically a duplicate of Hall's device, and from that part of the decree there is no appeal. We shall consider the appeals in the order of their numbers.

The Hall invention relates to a coin-controlled device adapted to use with various mechanical devices which release one or more objects to the operator upon deposit of a coin and operation of the device. It is designed to preclude improper operation of the de-

vice, and at the same time to return to the operator any other coin but the one which is adapted to successfully operate the mechanism.

Figures of the patent are here produced, as well as separate figures of the guide and slide as drawn by appellant:

in the coin aperture, and slide member 26 is moved inwardly, it will bring the substitute into the magnetic field, and the substitute when thus attracted will be held in the path of the finger 50, and will not be deposited in pocket 19. When a proper coin is used, not being magnetic, it will not be held in the

Fig. 2.

Fig. 3.

HALL PATENT IN SUIT

GUIDE  SLIDE  TEETH  COIN APERTURE

The device comprises a guide plate 12, having a coin release aperture 18, adjacent the inner end of which is a depressed ledge 19. The guide plate slidably supports the slide member 26, which is provided with a coin-receiving aperture 27, and slots 29 and 30 in which is extended a finger 50 carried by the guide plate 12. Over the slots is a magnet 53 which cooperates with the finger 50 in the manner hereinafter referred to.

The slide member 26 further includes projections 46 and 47 which function to move the coin out of the pocket formed by the depressed ledge 19 and to prevent retraction of the slide after having moved a predetermined distance relative to the guide. A pivotally mounted pawl 40 operates in the coin aperture to prevent operation of the slide 26 when containing no coin or a substitute. When a substitute such as a magnetic coin is mounted

plane of the slide by attraction, but it will be deposited in the pocket 19, thereby missing the finger 50, and thus permitting a full operative stroke of the slide. When a coin is once deposited in the pocket portion 19 of the guide plate 12, it cannot be retracted because element 46 of the slide will engage the coin and wedge it against the opposite wall of the pocket.

The claims of the patent which are alleged to be infringed are divided into two groups, and are so treated by the parties. Group 1 includes claims 6, 7, 8, 9, 10, 12, 17, 19, and 20, and each specifies (1) a pocket or depressed portion 19 formed in the guide to receive the coin from the aperture in the slide; and (2) means (teeth 46 and 47) for moving the coin in either direction in the pocket after it has dropped from the coin aperture in the slide. Claim 8 is typical.[1] Group 2 in-

---

[1] "8. In a device of the character described the combination of a slide provided with an aperture to receive a coin; a guide for said slide and means on said guide to permit a full stroke of predetermined length when said slide contains a coin, and to prohibit the predetermined stroke when no coin is in said slide; a pocket formed in said guide to receive the coin from said slide before the slide reaches the limit of its full stroke; and means on said slide to move the coin in said pocket in accordance with the direction of travel of said slide."

cludes claims 14, 15, 16, 23, 24, and 25, and each specifies (1) a slot 29 and 30 in the slide, and (2) a member (stop 49 and 50 fixed to the guide) extending into the slot in the slide to limit the travel of the slide when a magnetic token is used. Claims 14 and 25 are typical.[2]

The guide and the slide of appellant's commercial device are illustrated by the following figures:

**Fig. A.**

**Fig. C.**

It comprises a guide plate G which is fixedly held, and has formed therein an elongated slot D at the inner end of which is a discharge opening $D^1$. A coin slide S with a coin-receiving aperture A is slidably mounted on top of and supported by the guide G. Pivoted pawls positioned over the slide and supported by the guide are adapted to engage the coin aperture A to prevent inward movement of the slide when no coin is present or when a paper or a perforated or slotted slug is used.

A discharge opening $D^1$ through which the coin from A will fall, is formed at the inner end of D in the inner portion of the guide G. A disk $S^1$ is rotably mounted in the slide at the back of and in communication with the coin aperture A. It has a curved notch in its periphery which registers with the aperture A when the slide is in its normal position, and is adapted to abut the coin or magnetic token, and so long as the coin or magnetic token engages the curved notch in disk $S^1$ rotation of $S^1$ is prevented. The rotation of $S^1$ normally occurs when the finger or pin P on the disk strikes the angular side $C^1$ of the slot in the guide as the pin is about to enter the narrowest portion of the slot (as shown in Fig. A.) in completion of the full stroke of the slide. This rotation of the disk can only occur when a proper coin is used and in the following manner: When by the action of the slide S the valid coin is positioned over the ledge L, which is beyond the center of the coin, and which occurs just before the pin P strikes the angular side of the slot, that part of the coin not supported by the ledge L drops by force of gravity sufficiently for the disk to rotate beneath it, thus aiding gravity in discharging the coin and thus permitting the full stroke of the slide. When the coin once tilts over the ledge, even before the disk begins to rotate, it is impossible to retract the slide, and an effort to do so will result in jamming the coin against the opposite side of the guide at $C^2$. A pivoted spring-pressed two-way dog, attached to the guide, coacts as a ratchet with notches in one side of the slide, to prevent withdrawal of the slide after its initial movement, thus requiring a full stroke of the slide for the discharge of the coin through the discharge opening in the guide before the slide can be retracted. It is to be observed, however, that after the coin begins to tilt over the ledge L, which is before the ratchet begins to function, it is impossible to withdraw the slide on account of disk $S^1$ jamming the coin against the opposite side of the guide. This jamming of the coin is just as effective in preventing the retraction of the slide as is the ratchet, and it continues until the coin drops from the device which does not occur until the dog of the ratchet has engaged the second or third tooth. Attached to the guide is a magnet which is above the coin slide over

2 "14. In a device of the character described the combination of a coin slide provided with a slot; a guide for said slide; a magnet disposed above said slide over said slot; and a member extending into said slot and cooperating with said magnet to limit the full travel of said slide when a magnetic element is carried by said slide in place of the intended coin."

"25. In a device of the character described the combination of a slide provided with an aperture to receive a coin; a slot in said slide; a guide for said slide; a magnet disposed above said slide and over said slot; means extending into said slot to permit the full operative travel of said slide when carrying a coin, said means having an extension cooperating with said magnet to prohibit said full operative travel when the slide carries a magnetic substitute for the coin; and means on said guide to prevent a full stroke of said slide when containing no coin."

the slot, and, when a magnetic token is used, it is carried to the ledge L in the same manner as a valid coin, but, instead of tilting over the ledge, it is attracted by the magnet and thereby kept in line with the plane of the slide and prevents the disk $S^1$ from rotating, and the token from being discharged, and also prevents the full operative stroke of the slide S. When slide S is retracted from a full operative stroke the disk $S^1$ and the pin P remain in the same position into which they have been shifted by cam $C^1$ until P strikes cam $C^2$, which reversely rotates P and $S^1$ to their normal position. The function of the elongated slot D is to permit the pin P of the disk $S^1$ to extend into slot D and cooperate with the magnet to limit the full travel of the slide when a magnetic token is used. It also functions to permit the pin P to move a full stroke with the slide and to be acted upon by cams $C^1$ and $C^2$.

The first group of Hall's claims includes, as a part of the combination, a pocket 19, and means 46 and 47 for moving a coin forwardly through it, in which pocket the coin is trapped to prevent the withdrawal of the coin or the slide, thus thwarting what is known as "milking the machine."

That appellant's devices I and 10 include all the elements of the Hall patent, as set forth in the claims in issue, we think cannot well be doubted. A reading of claim 8 in connection with Figs. A and C is quite reassuring of that conclusion: "In a device of the character described the combination of a slide (S) provided with an aperture (A) to receive a coin, a guide (G) for said slide and means (the pivotally supported pawl) on said guide to permit a full stroke of predetermined length when said slide contains a coin, and to prohibit the predetermined stroke when no coin is in said aperture (A); a pocket (D and L) formed in said guide to receive the coin from said slide before the slide reaches the limit of its full stroke; and means (F) to move the coin in said pocket in accordance with the direction of travel of said slide."

The District Court in effect held, and we think rightly, that the disks $S^1$, fingers F, slot D, and ledge L of appellant's devices were the mechanical equivalent in conception, function and result of the depressed ledge 19, and projections 46 and 47 of Hall.

It is not denied that the depressed pocket and depressed teeth in the Hall patent constitute a full-stroke device, and it is likewise admitted that the alleged infringing devices are full-stroke devices of the pawl and ratchet type. Appellant therefore argues that the court held that one was the equivalent of the

other. But the court made no such ruling. As previously shown, appellant uses both types in devices I and 10, and the reason for so doing is left to conjecture. It may be said, however, that appellant's device H, which is almost a duplicate of the patented device and which was held to infringe, does not contain the pawl and ratchet. When notified of infringement in the sale of device H, appellant desisted, and thereafter produced devices I and 10. We are therefore constrained to hold that Exhibits I and 10 infringe the claims of group 1, provided the patent is valid, which question will be discussed later.

With respect to the second group of claims the parties hereto have used claim 14 as illustrative, and we shall do so. The following comparison constrains us to hold that appellant's commercial devices I and 10 include each and every element of the patented combination:

| HALL PATENT. | EXHIBITS I AND 10. |
|---|---|
| In the device of the character described, the combination of: | In the device of the character described, the combination of: |
| (a) A coin slide (26) | A coin slide (S) |
| (b) A slot (29-30) | A slot (D) |
| (c) A guide (12) | A guide (G) |
| (d) A magnet (53) | A magnet (M) |
| (e) A member (49-50) | A member (P and $S^1$) |

The only question presented, therefore, is whether appellant avoids infringement by placing the abutment member P and $S^1$ on the slide instead of on the guide, and by forming the elongated slot D in the guide instead of the slide, and we are convinced that the question must be answered in the negative. In appellant's devices there is a mere reversal or transposition of parts used in the patent, but they produce the same functions in substantially the same way, and accomplish the same result as the patent. Infringement is not escaped by a mere change of forms without change of function. Union Paper Bag Machine Company v. Murphy, 97 U. S. 120, 24 L. Ed. 935. See, also, United States Ozone Company v. United States Ozone Company of America (C. C. A.) 62 F.(2d) 881; Simplex Appliance Company v. Star Can Opener Company (C. C. A.) 37 F. (2d) 491; Sanitary Refrigerator Company v. Winters (C. C. A.) 24 F.(2d) 15; Smith v. American Electric Rabbit Racing Association (D. C.) 21 F.(2d) 366; Id. (C. C. A.) 26 F.(2d) 1016; Adam v. Folger (C. C. A.) 120 F. 260; Western Electric Company v. Sperry Electric Company (C. C. A.) 58 F. 186; Hopkins on Patents, vol. I (1911) 205.

Appellant, however, contends that the patentee, in order to avoid the prior art, con-

sidered and treated the specific locations of his parts as limitations. If this were true, then no doubt the rule laid down in D'Arcy Spring Company v. Marshall Ventilated Mattress Company (C. C. A.) 259 F. 236, would hold appellees to such limitations. But we find nothing in the record to support the factual basis for that rule. It is obvious to us that Hall's novelty did not consist in improving the form, location, or sequence of elements in an existing combination, but in combining the elements, most, if not all, of which were old, to produce a new result. We therefore hold that appellant's devices I and 10 infringe the claims of the second group, providing the patent is not anticipated by the prior art.

The prior art patents upon which appellant relies as anticipating the patent in suit are: No. 572,513, Arthur; No. 606,249, Snapp; No. 778,480, Elliott; No. 782,197, Hall and McLeod; and No. 881,688, Hofheimer. A study of these cited patents discloses that that combination of the elements of the claims in suit, irrespective of their location, is not found in any of the citations, and this fact certainly disproves appellant's contention that the claims in suit are of a limited scope.

Elliott, Hall and McLeod, and Hofheimer were cited and considered with respect to Hall's application, and this fact strengthens the presumption of validity of the claims in suit which arises from the grant of the patent, and the evidence submitted by appellant we do not deem sufficient to overcome that presumption. This conclusion is further supported not only by the commercial success which the patent has enjoyed, but by the further fact that appellant copied it in its device H and extensively advertised its novel merits, and also those of devices I and 10.

The decree with reference to the claims of the Hall patent No. 1,908,752 is affirmed.

Appeal No. 5180 is based on that part of the decree which dismissed the bill with respect to the Tratsch patent No. 1,908,380.

Claims 1 to 7, inclusive, were relied upon, and 1 and 7 are typical.[3] The court was of the opinion that each of the claims relied upon, if valid, was infringed by appellee's devices, Exhibits H, I, and 10, but it held that the patent was anticipated by the following prior art patents: 431,366 to Lang; 449,749 and 553,872 to Roovers; 603,741 to Romans and Grover; 792,885 to Elliott; 881,688 to Hofheimer; and 1,109,960 to Merkle. No further statement of the court with respect to this ruling appears in the findings or conclusions, and there was no memorandum opinion.

The only differences urged by appellants between claim 1 and the prior art patents lies in the number and position of the dogs on the patent in issue which engage the aperture, thus contacting the spurious token on both sides and at more points. Claims 2, 3, 4, and 5 comprise no more elements than does claim 1, and it is clear that each of the first five claims was anticipated by the prior art cited. The use of dogs was quite old in the art, and we are convinced that Tratsch by these claims added nothing new or useful to the prior art combinations in this field. The use of more dogs than had formerly been used, and placing them in different positions for the purpose of accomplishing the same result as formerly, would amount to nothing more than mechanical skill, and certainly could not be considered as rising to the dignity of invention. Under the first five claims Tratsch produces the same result as the prior art produced, and he does it in substantially the same manner and by substantially the same

---

[3] "1. In a device of the character described the combination of a slide provided with an aperture to receive a coin; a guide for said slide adapted to permit a stroke of predetermined length when said slide contains a coin; and means on said guide for preventing a full stroke of said slide when containing no coin, said means comprising a pair of pivoted members engageable with said aperture on one side of said slide, and a single pivoted member engageable with said aperture on the other side of said slide, the single member disposed intermediate said pair."

"7. In a device of the character described the combination of a slide provided with an aperture to receive a coin; a slot in said slide; a guide for said slide; a magnet disposed above said slide and over said slot; means extending into said slot to permit the full operative travel of said slide when carrying a coin, said means having an extension cooperating with said magnet to prohibit said full operative travel when the slide carries a magnetic substitute for the coin, said extension abutting the substitute attracted by said magnet; and means on said guide to prevent a full stroke of said slide when containing no coin, said means comprising a pair of pivoted members engageable with said aperture on one side of said slide, and a single pivoted member engageable with said aperture on the other side of said slide, the single member disposed intermediate said pair."

means, and we think the court was right in so holding.

However, we are convinced that claims 6 and 7 are not anticipated by the prior art patents. These claims, in addition to the substance of claims 1 to 5, inclusive, comprise a slot in the slide; a magnet disposed above the slide and over the slot; means extending into said slot having an extension cooperating with the magnet to prohibit the full operative travel of the slide when it carries a magnetic substitute for the coin, said extension abutting the substitute attracted by the magnet.

In order to constitute anticipation of a combination claim, it is necessary that all the elements of the combination, or their mechanical equivalents, should be found in a single patent or description, where they do substantially the same work by substantially the same means. Rhodes v. Lincoln Press-Drill Company (C. C.) 64 F. 218. It is obvious that no one of the prior art patents cited complies with that rule. Roovers and Hofheimer were cited and considered by the Patent Office as against the application of Tratsch, and this adds some weight to the presumption of validity of these claims.

What was said with respect to appellee's conduct and admissions by way of advertisement with respect to the Hall patent is equally pertinent to the Tratsch patent, and adds further weight to the presumption of its validity. Lang, Elliott, Merkle, and Hofheimer were unsuccessfully cited to Hall's patent. If they did not anticipate Hall, we are unable to understand why they anticipate Tratsch, for Hall and Tratsch are quite alike. Indeed an interference was declared in the Patent Office between Hall and Tratsch, but it was later dissolved because both applications at that time were owned by the same parties.

We are convinced that the District Court properly ruled that claims 6 and 7 of the Tratsch patent were infringed by appellee's devices II, I, and 10. We are further convinced that those claims are valid and that the court erred in dismissing the bill as to them. That part of the decree which dismissed the bill with respect to claims 6 and 7 of the Tratsch patent is reversed, and the cause is remanded with instructions to reinstate that part of the bill, and for further proceedings not inconsistent with this opinion. It is ordered that one-fourth of the costs of these appeals be taxed against Walter A. Tratsch and the Monarch Tool & Manufacturing Company and three-fourths against the Chicago Lock Company.