**ACE PATENTS CORPORATION v. EX-
HIBIT SUPPLY CO.**

**SAME v. GENCO, Inc.**

**SAME v. CHICAGO COIN MACH. CO.**

Nos. 7402–7404.

Circuit Court of Appeals, Seventh Circuit.

March 12, 1941.

Rehearing Denied May 16, 1941.

---

Geo. I. Haight, M. K. Hobbs, Geo. H. Simmons, and Clarence E. Threedy, all of Chicago, Ill., for appellants.

Casper W. Ooms, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Appellee by three separate actions charged the three appellants with infringement of the Nelson patent, No. 2,109,678. The causes were consolidated for trial in the District Court, and they are likewise consolidated for the purposes of these appeals.

The patent was issued March 1, 1938, on an application filed January 12, 1937. The defenses were anticipation by prior patents and publications; a prior knowledge, use, and sale; non-invention in view of the prior art; and non-infringement. Each of the decrees found the Nelson patent valid and infringed, and ordered an injunction and an accounting. From those decrees these appeals are prosecuted.

The invention relates to gaming devices commonly called pin ball games, usually operated by a coin. The patent is entitled "Contact Switch for Ball Rolling Games," and the specific thing claimed is the construction of a switch target in the form of a resilient circuit closer, so disposed on the game table as to be contacted by a freely rolling ball or other playing piece, which momentarily closes the associated electric circuit. The switch comprises a conductor standard mounted in the table and carries a coil spring having a leg pendantly disposed in the conductor ring located in the table slightly offset from the standard. The standard and ring are wired in a circuit with a source of energy and a relay coil in such a manner that when a ball rolling on the table bumps the coil spring from any angular direction, the leg of the spring will be caused momentarily to contact the conductor ring in the board to establish the circuit for operating the relay coil and any desired game auxiliary device.

A standard is mounted in an upright position on the table, the same having a reduced threaded shank passing through the table secured underneath the table by a metallic clip or nut.

The upper end of the standard is likewise reduced to form a threaded shank, the shoulder thus provided carrying a horizontal washer. The shank above the washer carries a cup-shaped cap and between the cap and washer is the end of a coil spring which at its lower end terminates in a pendant spring leg. The spring assembly is made secure by a lock washer and nut at the top of the standard.

Below the pendant leg and offset from the standard, the table is formed with an aperture in which is securely seated a conductor ferrule, into which the pendant leg is suspended and normally out of contact therewith. The ferrule at its lower end is formed with an inturning annular flange and an integral depending extension. The nut underneath the table, and the lower extension of the standard are disposed in an electrical circuit for an electromagnetic relay coil, and with a source of electrical energy.

In use, when a ball rolling on the table hits the spring to rebound therefrom, the impact moves the spring sufficiently to cause the pendant spring leg to contact with the inturning annular flange of the ferrule. This momentarily closes the circuit and causes energization of the magnetic relay coil for any desired purpose. Since the pendant spring leg is normally disposed at the center of the annular ferrule, a ball striking the spring from any angular direction will cause the circuit to close in the manner described.

Any desired number of such spring switch targets may be placed on the board in any suitable spaced relationship, and a single ball may successfully bump and close a number of the switch devices.

Claim 4 is in issue.[1]

■ To defeat the claim in suit appellants rely upon the following prior art: Fisher, No. 501,777; Quain, No. 1,057,879; Dabos, No. 541,079 (French); Nakashima, No. 1,678,573; Hooker, No. 2,042,786; Design Patents to Tratsch, numbered respectively 94,290; 94,291; and 94,714; the application of Mabs (subsequently dismissed); the prior use of the Bolo device, made by Pacent Novelty Company; and and the prior use by Fitch while employed by the Pacent Company. Concerning the prior use of Fitch the District Court said:

---

[1] "Claim 4. In a ball rolling game having a substantially horizontal table over which balls are rollable, the combination with said table of a substantially vertical standard anchored in said table with its lower end carrying on the underside of the table a lead for an electric circuit and its upper end extending a substantial distance above the top surface of the table, a coil spring surrounding the standard, means carrying said spring pendantly from the upper portion of the standard above the table with the coils of the spring spaced from the standard to enable the spring to be resiliently flexed when bumped by a ball rolling on the table, said spring being in the aforementioned circuit and constituting a conductor, and conductor means in said circuit and embedded in the table at a point spaced from the standard and engageable by a portion of the spring when it is flexed to close the aforementioned circuit."

"I do not believe the testimony in respect to that prior use. I do not believe there was any such prior use." A reading of this testimony convinces us that the court's conclusion in this respect is supported by substantial evidence. It is not claimed there is any ambiguity in the language employed by the court in expressing its conclusion on this point, and we are precluded from differing with it.

■ Appellants contend that the claim in suit is anticipated by Fisher, Quain, and Dabos, and that it lacks invention over the other prior art cited. That argument is based upon their assumption that the Nelson patent comprises merely a spring contact switch. The District Court agreed with appellee in denial of the assumption, and we feel impelled to hold that there was no error in that ruling. Fisher, Quain, and Dabos merely disclose devices and methods of closing electric circuits in burglar alarms. The first two were considered by the Patent Office. The District Court said that neither Fisher nor Dabos suggests a target for a pin table in which the target is formed of a simple coil spring, pendantly supported, which also forms the contact switch for the electrical circuit. This we think is obvious. Moreover, it is not suggested how either could be used in the environment disclosed by Nelson, and if so constructed, it would neither meet the terms of the claim, nor possess the advantages of the Nelson structure. True, appellants exhibited models alleged to embody the disclosures of Fisher, Dabos, and also Hooker. However, they are not full disclosures, or they are combinations of disclosures from more than one patent, and fail to read on the claim, either separately or in combination. If they did so read, they could not constitute anticipation of Nelson's combination claim, for no single prior art device cited discloses all the elements of Nelson. Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482.

Quain discloses a burglar alarm in which a coil spring is mounted within a ring with which it may come in contact if the device is moved. If employed on a pin table in the form suggested by appellants, it would be inaccessible to a ball rolling on the table. If Quain were reconstructed, like appellants' reconstruction of Fisher and Dabos, it would have the same disadvantages as all other such devices wherein the entire mounting is beneath the board. If Quain alone be incorporated in a pin table according to Nelson's suggestions it would not differ in this respect from Fisher and Dabos, and would have none of the advantages of the Nelson structure. We think the District Court was correct in holding that the claim was not anticipated by Fisher, Quain or Dabos.

■ Appellants next contend that the claim does not disclose invention. Hooker was not pleaded or identified in the notices under Section 4920 of the Revised Statutes, 35 U.S.C.A. § 69. Hence it was admissible only for the purpose of showing the state of the art and the lack of invention.

Both Hooker and Nakashima employ a leaf spring switch. In the former this spring is mounted to protrude through the playing board so that the rolling ball may strike it. The spring is not pendantly hung from above the board, and is operable to close the switch only when the ball strikes it from the front. In the latter the spring does not protrude through the hole, but forms the seat of the hole into which the rolling ball perchance may come to rest, and thus by its weight close the switch. In each of these devices the mounting is beneath the table, thus causing a disadvantageous limitation which Nelson overcame.

Concerning the Bolo device, the District Court said, in substance: "It shows a number of comparatively complex switches mounted beneath the board, upon each of which a small replica of a bowling pin is mounted above the board and forms the target for the ball. When this pin is struck it pivots upon the board and serves as one end of a lever to swing a long wire into contact with an annular ring mounted beneath the board. The coil spring employed is in conical form and merely restores the bowling pin to its upright position after the pin has been struck. The spring is not struck by the ball and is not pendantly supported. This device is wholly mounted beneath the table and is more complex than that of Nelson. It does not perform the same function as the Nelson device nor does it perform its function in a similar manner." We agree with this conclusion of the court.

The Tratsch design patents merely show the use of small spiral springs on playing boards of pin tables, but they do not show or even suggest the use of these springs as switches in electrical circuits.

What is referred to as the Mabs application discloses a lever type switch, with the

352

lever protruding above the pin table board and the switch mounted beneath the board, very much like the Bolo device. In this application for a patent Mabs had claims covering a pin lever switch and other claims covering a detector mechanism. The Patent Office required a division of these claims, whereupon Mabs canceled his claims with respect to the pin lever switch, which he termed as passé. A study of all the prior art disclosures convinces us that not one of them, or all of them in combination, would produce a structure containing all of the elements of Nelson.

■ There is evidence of considerable commercial success enjoyed by the Nelson disclosure. We realize that commercial success should not be used to create a doubt, but it may at times, if properly weighed, be very helpful in dissolving one. Commercial success alone may be very deceptive if secured by intensive advertising, but where, as here, a commercial success follows the immediate use by appellants, we are given further assurance that the commercial success is perhaps warranted.

This patent bears the approval of the Commissioner of Patents, as well as of the District Court, and the evidence before us does not convince us that they were in error with respect to either anticipation or patentability.

■ Appellants further contend that their defense of patent office estoppel in this case should be sustained. It is based upon the following facts:

The original application contained six claims. In rejecting them the examiner said: "The fact that the applicant's device is designed to be operated by a rolling ball, while other means are used in the references is not considered to be of patentable significance." They were all amended and new claim 7 was added. In response to this amendment the examiner rejected claim 7 as failing to distinctly claim the invention. He said: "It is old in the art to make an electrical contact by flexing a coil spring as shown by the art already cited in the case. In order to distinguish over the references therefor, the applicant's particular type of contact structure, comprising an extension on the coil spring adapted to engage an annular contact embedded in the table, must appear in the claims * * *."

In response thereto Nelson again amended by striking and adding. We have set forth original claim 7 with the amendments here suggested (Matter in parenthesis inserted, and matter stricken, so marked):

"(4) ~7~ In a ball rolling game having a substantially horizontal table over which balls are rollable, the combination with said table of a substantially vertical standard anchored in said table with its lower end carrying on the underside of the table a lead for an electric circuit and its upper end extending a substantial distance above the top surface of the table, a coil spring surrounding the standard, means carrying said spring pendantly from the upper portion of the standard (ABOVE THE TABLE) with the coils of the spring spaced from the standard ~and the lower end of the coil spring terminating at a distance above the top surface of the table~ to enable the spring to be resiliently flexed when bumped by a ball rolling on the table, said spring being in the aforementioned circuit and constituting a conductor, and ~other~ conductor means (IN SAID CIRCUIT AND EMBEDDED IN) ~carried by~ the table at a point spaced from the standard and engageable by a portion of the spring when it is flexed to close the aforementioned circuit."

The examiner again rejected claim 7 as describing an inoperative structure, as the coil spring could not both terminate at a distance above the table and extend into a ferrule embedded therein. He added: "It is true as the applicant suggested that if the pendant spring leg were removed from the spring and embedded in the table an operative device would result but no such structure has been brought out by the drawing or specification." Claim 4 was then amended to its present form, and Nelson thereupon stated that the claim "has been significantly amended near the end to define the complementary conductor contact as being embedded in the table."

By these proceedings appellants contend that claim 4 is limited to a complementary conductor, and a complementary conductor contact, which are embedded in the table, and that appellee is estopped to assert infringement against appellants' devices because neither of their complementary conductors or contacts are embedded in the table. The main controversy here is over the meaning of the word "embed." Webster defines it: "To set solidly as in a bed; to lay in surrounding matter; to bed;

as to embed a brick in mortar." The Oxford English Dictionary defines it: "To fix firmly in a surrounding mass of some solid material." Appellants rely upon these two authorities, and construe each to mean that the thing embedded must not extend above or below the embedding material, which in this case is the top board of the pin table. The claim does not specifically require the contact to be below the top surface and above the bottom surface of the board, but of course it must be there, if appellants' construction of the definitions is correct. They urge its correctness because it consists with the intention of Nelson as expressed in his letter to the examiner, to which we have previously referred, and with the intention of the examiner who accepted the amendment upon receipt of the letter.

We cannot accept appellants' construction of the definitions referred to. A reading of them convinces us that if a thing is solidly set in surrounding matter or if it is fixed firmly in a surrounding mass of solid material, it must be considered as being embedded in the matter or material regardless of whether it protrudes above or below the matter or material. In arriving at the intention of both the patentee and the examiner, we are also warranted in looking at the drawings and specifications. The drawing clearly discloses that the embedded ferrule, which is the complementary conductor, extends both above and below the table, and we think there can be no doubt that this was observed and approved by the examiner when he allowed the claim. So far as the ferrule is concerned, it is clear that the examiner did not approve appellants' construction of the definitions of "embed," for neither the drawings nor the specification indicated any such limitation. The drawings indicate the contrary. In Nelson's letter it is not clear why he should have said that his conductor contact was to be embedded in the table, because the examiner's remarks on his last rejection of claim 7, and Nelson's amendment in response thereto required no such construction. Moreover, under any construction of the word "embed" which has been suggested, it would seem impossible to set solidly and to fix firmly an electrical contact designed to open and close frequently. We speak here with respect to contact as an accomplished fact, as distinquished from points of contact which are necessarily used in making the contact

The later embodiments of appellee's claim have further extended the ferrule upwardly above the table top, yet its bottom is set solidly and fixed firmly in the surrounding solid wood of the table top, and we think it must be considered as embedded therein. We hold there is no file wrapper estoppel here.

On the question of infringement appellants contend that their devices, marked as plaintiff's exhibits 5 and 7, do not infringe because the pin, which is a nail driven through the block, which forms the conductor in the electrical circuit, is not embedded in the table. In view of what we have said with respect to the definition of the word "embed," we think there is no merit in this contention. Otherwise, the two devices read upon the claim and we think they infringe.

With respect to the exhibits of Chicago Coin Machine Company and Genco, Inc., marked plaintiff's exhibits 6 and 10, it may be said that they differ from exhibits 5 and 7 only in that appellants have cut a large hole in the pin table at the point where the conductor is normally embedded and have covered this hole with an additional plate of metal which is secured to a pin table by the standard, and they have embedded the conductors in this metal plate. The metal plate serves no function except to support the pin which, in the previous devices, was driven directly into the board. In other words, they have transformed the pin table from a single solid board into a structure composed of a solid board with an overlying metal layer. They have separated one unit into two parts which perform the same function in identically the same manner, and we think infringement is clear. Highway Appliances Co. v. American Concrete Expansion Joint Co., 7 Cir., 93 F.2d 113, and Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482.

In the accused devices of the Exhibit Supply Company, referred to as plaintiff's exhibits. 8 and 9, the laminations in exhibits 6 and 10 are removed, and there is substituted therefor a plastic core. Although this is not horizontally spread out to form the laminations of the pin table, it is attached to the pin table equally securely by means of the standard which is embedded in the board. As to these exhibits, appellants stress the fact that the terms of the Nelson patent were varied from a demand that the conductor be "car-

ried by the table at a point spaced from the standard" to "embedded in the table at a point spaced from the standard." This argument likewise depends upon the correctness of appellants' definition of the word "embed." Prior to this substitution of language, almost any form of conductor which was mounted on the table in any place or manner, permanently or movably, would have answered the language of the claim. The substitution was made to cover the preferred embodiment of the structure as shown in the drawing, and, as we have stated, it met what we consider the proper interpretation of the word "embed." As stated by appellee, it was important that the conductor be embedded in order that the fixed relationship between it and the coil spring would be insured. Its vertical position was unimportant except that it had to be within reach of the terminal of the coil spring so as to form a contact. The position that was important was its horizontal relation to the coil spring. The position of the latter was fixed by the position of the standard that was likewise embedded in the pin table. With the conductor embedded in the table, there was a fixed and unyielding relationship between the two. That the vertical position of the conductor was unimportant for any reason except reaching the terminal of the coil spring, is clearly shown by Nelson's own anticipation, which he expressed in one of his communications to the Patent Office, of the simple reversal which defendants first adopted. He therefore realized that if the pin were embedded in the table and extended upward to meet a terminal on the coil springs, his structure would be present and readable upon the claim.

Appellants at different times have varied the elevation at which the conductor was mounted, but we think it is obvious that they have never varied the one essential demand of the claim that the conductor be embedded either directly or indirectly in the pin table. We agree with appellee that exhibits 8 and 9 are merely mechanical equivalents of the Nelson structure, and we are convinced that appellants are in error in contending that the Nelson patent will not reach mechanical equivalence because of this change in terminology in the Patent Office. Gray Telephone Pay Station Co. v. Baird Mfg. Co., 7 Cir., 174 F. 417; Libbey Glass Mfg. Co. v. Albert Pick Co., 7 Cir., 63 F.2d 469.

The decrees are affirmed.