**HUNTER DOUGLAS CORPORATION,**
a corporation, Plaintiff,

v.

**KWIK–KLEEN VENETIAN BLIND LAUNDRIES, Inc.,** doing business under the fictitious name and style of **Archer Venetian Blind Co., Defendant.**

**No. 16346.**

United States District Court,
S. D. California, Central Division.

Feb. 2, 1955.

Lyon & Lyon, Lewis E. Lyon, Reginald E. Caughey, Los Angeles, Calif., for the plaintiff.

Fulwider, Mattingly & Huntley, Robert W. Fulwider, Los Angeles, Calif., and George F. Smyth, Inglewood, Calif., for defendant.

YANKWICH, Chief Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the plaintiff adjudging the patent in suit to be valid and infringed, with injunction against further infringement and accounting for damages pursuant to Section 70 of Title 35 U.S.C.[*] Reference to Leslie S. Bowden to take accounting and determine damages. Costs to the plaintiff.

Findings and Judgment to be prepared by counsel for the plaintiff under Local Rule 7.

## Comment

The action is for infringement of Patent No. 2646115 issued to Leon R. Bucher and Omar K. Skiver on July 21, 1953, on application filed January 24, 1952. The patent relates to a new type of venetian blind, the object of which is to achieve "full closure." The scope of the invention and the problem which the present invention was intended to meet is stated in the specifications in this manner:

"In a conventional blind, the crowned sheet metal slats are prevented from closing tightly together by the lift cords, which pass through cord holes in the slats. The cord limits the angle to which the slat can be tilted, owing to the fact that in the extreme tilted position of the slat, the cord engages one end of the cord hole and the opposite outer edge of the slat. Thus, there is a gap left between the bottom edge of one slat and the top surface of the next lower surface, of the same width as the thickness of the cord. Light leaking through these gaps between slats prevents the conventional blind from darkening a room sufficiently for projection purposes.

"In the present invention, the slats are notched in one edge along side the cord hole, so that in the extreme tilted position of the slat, the cord engages the bottom of the notch and the top end of the cord hole. However, the bottom edge of the slat on either side of the notch extends further down toward the slat below by a distance equal to the depth of the notch. Owing to the curvature of the downwardly concave slat, the direction in which the bottom edge of the slat extends is directly toward the slat below. Hence, the gap between the slats when the blind is closed is materially reduced, and may be eliminated altogether if the notch is made somewhat deeper than the thickness of the cord. Better closure is also obtained if the notch is made wider than the cross bars of the ladder tape, and the cord hole is offset laterally from the center-line of the slat to the side opposite the notch, which permits the slat to drop down

[*] Now 35 U.S.C.A. §§ 283–286, 290.

slightly in the fully tilted position toward the slat below."

Venetian blinds at all times have had as one of their objects the exclusion of a quantity of light. Only with the development of audio-visual education calling for the use of motion pictures, slides, television and the like, and the darkening of classrooms and auditoriums in order that these visual aids be utilized, did the need arise for a "full closure" blind that would make it possible to darken a room to an extremely low level of illumination at any time of the day. This is achieved in the patented invention by notching the slats on one edge alongside the cord hole.

More specifically, the invention of the patent in suit solved the problem by permitting the slats of the Venetian blind to be easily and simply moved to a position of full closure and achieved this result by the combination of elements as defined in claims 1 and 2 of the Letters Patent in suit wherein a crowned slat blind was so assembled with respect to the operating ladder and lift cord as to permit the arched slats when actuated to a closed position to move in an arcuate path so that the lower edge of each crowned slat engages the curved surface of a slat immediately underlying it to obtain full closure.

The mode of operation of the full closure blind of the patent is that, on closing, the crowned sheet metal slats, as they are supported upon the cross bars of the ladders, are rotated and due to the position of the lift cord hold and the edge notch formed in the edge of the slat in its position with relation to the cross bars and side tabs of the ladder, the slats in being moved to a vertical position follow and move in a curved path in dropping to their full closure position. The result is that the forward edge of each slat engages the curved surface of a slat immediately below it to attain a full closure position.

The mode of operation of the blind and slats of the blind of the Letters Patent in suit as defined in claims 1 and 2 of said Letters Patent was new and novel and attained a new and novel result not found in any of the prior art.

The defendants have challenged the validity of the patent, citing as the prior anticipatory art the following patents: Nos. 2,662,592—(J. H. Bierlich); 2,573,-700—(H. W. Ferguson et al.); 175,563—(Peter Huhn); 2,495,973—(Griffith Jones); 2,283,640—(D. Kwon); 62,348—(Freeman Little); 2,410,549—(E. A. Olson); 167,942—(John Seaman); 2,-572,224—(B. Walker); 2,504,771—(W. H. West). Of these, only *Jones* was cited as a reference by the Examiner.

It is not to be denied that the patent in suit achieves a full closure. None of the patents in the prior art, not even Kwon No. 2,283,640 and Bierlich No. 2,662,592, which are designated as "the best references", achieve this result. The patent in suit is the only one that met stated problem efficiently. It is invention over the prior art, and therefore, valid. Pointer v. Six Wheel Corp., 9 Cir., 1949, 177 F.2d 153, 158–162. [See drawings and full text of specifications at end of opinion. (Exhibit A.)]

A study of the accused device and the demonstrations in the courtroom lead to the conclusion that the defendant's device infringes both claims of the patent in suit.[2] The record shows that

2. The two claims in suit are:

"(1) A crowned slat for use in a full-closure Venetian blind having slat-supporting ladders and lift cords, each of said ladders comprising a pair of tapes disposed on opposite sides of said slats and connected together by a plurality of narrow cross bars which are staggered alternately on opposite sides of the centerline of the tapes, said lift cord passing down through said ladders between said alternately staggered crossbars, each of said slats being provided with a transversely elongated, closed cord hole offset laterally to one side of the longitudinal centerline thereof, said lift cords passing through said cord holes, and each of said slats having a longitudinally elongated notch formed in the edge thereof and laterally alignment with said cord hole on the opposite side of said centerline, said notch being wider than the combined width of two adjacent crossbars and substantially deeper than the thickness of

because of the impatience of some of the school authorities with the slowness with which the plaintiff was introducing its invention into the market, the defendant, at the urging of some school authorities, studied a model embodying plaintiff's invention and proceeded to duplicate it.

The defendant's blind employs alternate notches in the slats for the alternate cross bars of the ladder as distinguished from the long edged notches formed in the edges of the slats of the patent in suit. The slats of the defendant's manufacture have each and every element of the slat of the patent in suit and operate in the same way to produce the same result as the patented device.

The alternate edge slots used by the defendant are the complete equivalent of the edge slots shown in and claimed in the patent in suit. At most, the defendant has eliminated or multiplied elements.

Multiplication of elements does not avoid infringement. 3 Walker on Patents, Deller's Ed., 1937, Sec. 462; Samson-United Corp. v. Sears, Roebuck & Co., 2 Cir., 1939, 103 F.2d 312, 315; Ace Patents Corp. v. Exhibit Supply Co., 7 Cir., 1941, 119 F.2d 349, 353. Nor does the omission of one element of an invention avoid infringement when an equivalent is substituted for it. Edwards v. Hychex Products, 7 Cir., 1948, 171 F.2d 259, 260. The combination of two elements into one which performs the function of both in substantially the same manner does not avoid infringement. Royal Typewriter Co. v. Remington Rand, Inc., 2 Cir., 1948, 168 F.2d 691, 693. This is all that the defendant has done.

■■ Whether the plaintiff's invention be considered primary or not, the defendant's device constitutes no departure from the patent in suit. More, there is in it identity of function and result with the patented article. This is infringment. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 41–42, 50 S.Ct. 9, 74 L.Ed. 147; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 607–609, 70 S.Ct. 854, 94 L.Ed. 1097; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 1950, 181 F.2d 550, 557; Pointer v. Six Wheel Corp., 9 Cir., 1949, 177 F.2d 153, 162–163; Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 406. The fact that the defendant's device eliminates what has been called the occasional "flutter" of the blind does not help the defendant if, as we are satisfied, the device also achieves the same function in the same manner as the plaintiff's invention. 3 Walker on Patents, Deller's Ed., 1937, Sec. 467, p. 1704; Rockwood v. General Fire Extinguisher Co., 2 Cir., 1925, 8 F.2d 682, 688; Cleveland Automatic Machinery Co. v. National Acme Co., 6 Cir., 1931, 52 F.2d 769, 772; Johns Manville Corp. v. National Tank & Seal Co., 10 Cir., 1931, 49 F.2d 142, 146.

Hence the ruling above made.

said lift cord, and said notch being normally at the bottom of said slat when the latter is tilted to the closed position.

"(2) A full-closure Venetian blind comprising a plurality of horizontally extending, vertically spaced slats, at least two ladders supporting said slats, each of said ladders comprising a pair of tapes disposed on opposite sides of said slats and connected together by a plurality of vertically spaced narrow cross bars staggered on opposite sides of the centerline of the tapes, lift cords passing down through said ladders between said alternately staggered crossbars, each of said slats being crowned and having transversely elongated, closed cord holes provided therein offset laterally to one side of the longitudinal centerline of the slat, said lift cords passing through said cord holes and each of said slats having a longitudinally elongated notch formed in the edge thereof in lateral alignment with said cord hole on the opposite side of said center line, said notch being wider than the combined width of two adjacent crossbars and substantially deeper than the thickness of said lift cord, and said notch being normally at the bottom of said slat when the blind is tilted to closed position, whereby each slat drops the depth of said notches so that the bottom edge of the slat abuts against the top surface of the slat below."

E X H I B I T   A

July 21, 1953     L. R. BUCHER ET AL.     2,646,115
VENETIAN BLIND
Filed Jan. 24, 1952

INVENTORS
LEON R. BUCHER
OMAR K. SKIVER
BY  Herbert E. Kidder
AGENT